ELLA CREIGHTON, Respondent, v. MODERN WOOD-
MEN OF AMERICA, Appellant.

**Kansas City Court of Appeals, December 2, 1901.**

1. **Evidence:** IMPEACHING ONE'S OWN WITNESS: CONTRADIC-
TORY STATEMENTS. A party introducing a witness vouches for
his veracity and can not impeach him by showing his bad character
for truth or his contradictory statements.

2. ———: DISAPPOINTMENT IN WITNESS: REFRESHING MEM-
ORY. Where a witness disappoints the party calling him, the latter
may ask the witness questions tending to probe his memory by re-
calling to it previous statements, and drawing out explanations of
his apparent inconsistency and as also tending to show the circum-
stances under which the witness was called. Cases reviewed.

3. ———: OBJECTIONS: SAVING EXCEPTIONS: APPELLATE
PRACTICE. An objection that tendered evidence is irrelevant and
immaterial, is so general that nothing is saved for review in the ap-
pellate court.

4. ———: WAIVER: FORGERY: TRIAL AND APPELLATE PRAC-
TICE. Under the other evidence in the record it is held useless to
determine the question whether there was any evidence of a waiver
as to a certain certificate; and the question of its forgery was for
the trial and not the appellate court.

5. ———: DEMURRER: RULE. A demurrer to the evidence admits
not only the truth of the facts therein disclosed, but also every
reasonable inference favorable to the plaintiff.

Appeal from Daviess Circuit Court.—*Hon. E. J. Broaddus,*
Judge.

AFFIRMED.

*J. W. White, H. L. Sheldon* and *J. C. Leopard* for appel-
lant.

(1) The court erred in admitting illegal, irrelevant and incompetent evidence on the part of the plaintiff and in excluding legal, relevant and competent evidence on the part of the defendant. Underhill on Evidence, pp. 500 and 501; Brown v. Wood, 19 Mo. 475; Grocer Co. v. Frick, 73 Mo. App. 133; Dunn v. Dunnaker, 87 Mo. 600; State v. Burks, 132 Mo. 373; Drug Co. v. McMahan, 50 Mo. App. 18; Underhill on Evidence, p. 501; Smith v. Utesch, 52 N. W. 343; Hill v. Froelich, 14 N. Y. S. 610; Price v. Thornton, 10 Mo. 135; Rogers v. McCune, 1° Mo. 569; McDermott v. Railroad, 73 Mo. 516. (2) The court erred in refusing to declare the law as prayed by the defendant. (3) Under the evidence there is no waiver of the warranty of good health in this case. Pitts v. Insurance Co., 50 Am. State Rep. 96; Bacon on Mut. Ben. Societies, 388-434a; Thompson v. Life Ins. Co., 104 U. S. 252; Schmidt v. M. W. A., 54 N. W. 264; Niblack, p. 506; Elder v. Grand Lodge, 82 N. E. 987; Hempe v. Life Ins. Co., 35 S. E. 342; McCoy v. Ins. Co., 25 N. W. 289; Lyon v. Supreme Assembly, 26 N. E. 236; Burbank v. Boston P. R. Ass'n, 11 N. E. 691. (3) The court erred in refusing to sustain defendant's demurrer to the evidence offered at the close of the whole case.

*Henry L. Eads* and *O. P. Hubbell,* with *Harber & Knight* for plaintiff.

(1) It is useless to discuss as to whether or not these acts and declarations of clerk Dugger were a part of the *res gestae* or whether they were otherwise admissible as the declarations of the defendant; objection thereto, is wholly insufficient to warrant consideration thereof by this court. Lumber Co. v. Rogers, 145 Mo. 445; State v. Norman, 60 S. W. 1036. (2) The rule, is that it is not permissible for a party to impeach his own witness unless it is shown that he was in some way

trapped into offering him as a witness, or it was brought about by surprise or imposition, all of which is lacking here.     Dunn v. Dunnaker, 87 Mo. 597; State to use, etc., v. Martin, 52 App. 511; State v. Burks, 132 Mo. 363; Spurgin Grocery Co. v. Frick, 73 Mo. App. 128; Imhoff v. McArthur, 146 Mo. 371; Chandler v. Fleeman, 50 Mo. 239; Claflin v. Dodson, 111 Mo. 195; Brown v. Wood, 19 Mo. 475; Edwards v. Crenshaw, 30 Mo. App. 510; Price v. Lederer, 33 Mo. App. 426; Spurgin Grocery Co., v. Frick, 73 Mo. App. 128, approved; Frame v. Sovereign Camp, 67 Mo. App. 127; McMahon v. Maccabees, 151 Mo. 522; Lewis v. Benefit Ass'n, 77 Mo. App. 586.

SMITH, P. J.—The defendant, an incorporated fraternal beneficiary society, issued a benefit certificate to one D. O. Galbreath, a member thereof, for one thousand dollars, payable to the plaintiff.     One of the by-laws of the defendant (section 32) provides that every benefit-certificate holder shall be liable for the payment of the assessment levied next after his adoption and for all assessments thereafter levied, including assessments current at his death.     And another (section 48) provides that every beneficial member when so notified that a benefit assessment has been levied and ordered collected by the board of directors and shall fail to pay the same on or before the first day of the month following the date of said notice, shall thereby, *ipso facto*, become suspended and during such suspension his benefit certificate shall be absolutely null. And in still another (section 51) it provides that any member suspended for non-payment of assessments, dues or fines may be reinstated by payment of all arrearages of every kind within sixty days from the date of suspension, *provided, however*, that he file with the clerk a written warranty, signed by himself, showing him to be in as good health at the time of payment as at the time of suspension.

An assessment for the month of March, 1898, was regularly levied and called for, of which Galbreath was duly notified. This assessment was payable on or before April 1, 1898, and the said Galbreath having made default therein became from and after the second day of said month of April suspended and his certificate invalid. On the eighth day of May, 1898, said Galbreath lost his life by accidental drowning. The plaintiff claims that on May 6, two days before his death, the said Galbreath paid the clerk of the camp all dues and assessments and furnished to him at the same time the warranty-of-good-health certificate required to be furnished by members before they could be reinstated and their rights restored; and whether or not this was so, was about the only issue of fact to be determined.

The case was tried before the court without the aid of a jury, where the finding and judgment was for plaintiff and defendant appealed. The principal errors assigned by defendant for a reversal of the judgment relate to the action of the lower court in respect to the admission of evidence.

At the trial the defendant, for the purpose of showing that Galbreath had failed to pay his assessment and therefore stood suspended at the time of his decease, called as a witness to testify in its behalf one Dugger, who was the clerk of the subordinate camp to which Galbreath belonged and who testified that he collected all the assessments from the members who offered to pay and that neither Galbreath nor any one for him paid his assessment on or before the first day of April, 1898, and consequently he was suspended; and that he had so notified the "head clerk" who notified Galbreath of his suspension, inclosing with such notice a blank "warranty of good health." This witness on cross-examination testified that said Galbreath, on the sixth of May, 1898, two days before his death occurred, paid him (witness) the full amount assessed against him and at the same time delivered to him the warranty-of-good-health

certificate. Upon re-direct examination he stated, in response
to questions concerning the warranty of good health, as fol-
lows: "Q. Did he (Galbreath) deliver that (health warranty)
to you at that time? A. Yes, sir; that was my understanding.
Q. Was it signed by Mr. Galbreath? A. Well, I always sup-.
posed it was. Q. He delivered it to you on May 6? A. That is
my understanding. Q. Do you remember making a state-
ment to me (Mr. Sheldon) that the warranty of good health
was not delivered to you until after the death of Mr. Gal-
breath? A. I never made any such statement, I don't think.
Q. Did you make a statement and sign your name to it con-
cerning this warranty of good health? A. Yes, sir; I made
some statement." The attorney then handed to witness Dug-
ger a book in which there was a written statement by said
Dugger as follows:

"Harrison county, Mo., 9-28-98. I wish to state that
said warranty of good health to-day shown me by H. L. Shel-
don, purporting to be executed by D. O. Galbreath and dated
May 6, 1898, was delivered to me after the death of said D. O.
Galbreath and the statement heretofore made by me that it
was delivered before his death I now think is erroneous possi-
bly. F. H. Dugger."

Defendant asked witness if he remembered having a con-
versation with Doc. Galbreath (brother of deceased and of the
beneficiary) after the funeral, in presence of Rev. Weary, con-
cerning the said warranty of good health, in which Doc. Gal-
breath stated to said Dugger that he had found the receipts and
the warranty of good health signed up; also he was asked if he
said to Rev. Weary that Mr. Galbreath had received the war-
ranty of good health, and if he had signed it he would get his
money, but that he didn't know whether he had signed it or
not. Also, the witness was asked concerning a talk with one
Geo. Dillon, and while the court permitted witness Dugger to
answer, the court said: "Remember you are bound by his an-

swer; you can not impeach your own witness."

Later Geo. Dillon was called by defendant as witness and an offer made to show a conversation with said Dugger concerning Galbreath's standing in the order. Defendant also offered to show by Rev. Louis Weary that on the morning of the funeral of David O. Galbreath, at the Methodist church in Coffeyburg, he had a conversation with F. H. Dugger in which Dugger said that David O. Galbreath received the blank warranty of good health and that if he had signed and sent it he would get the money; he did not know whether he had sent it or not. Defendant also offered to show by the last-named witness that at the church the morning after the funeral, he overheard a conversation between Dr. Galbreath and F. H. Dugger in which Dr. Galbreath said: "I have found the receipts or some of them and the warranty of good health, all signed up."

The plaintiff objected to the foregoing offers of evidence on the ground that such evidence if received would have the tendency to impeach the plaintiff's own witness, Dugger, which objection was by the court sustained and defendant's offers rejected. These rulings of the trial court are made the basis of the defendant's first assignment of error. The general rule is that a party introducing a witness, and thereby vouching for his veracity, can not impeach his testimony either by general evidence showing his bad character for truth, or *by evidence of statements made by him out of court contradictory of his testimony at the trial.* 1 Greenleaf on Evi., sec. 442. Proof of such contradictory statements could not be allowed as evidence of their truth and could therefore be offered or received for no other purpose than to destroy the credit of the witness. And unless the party is entrapped into offering as a witness one who testifies contrary to what he or others upon whom the party had a right to rely, assured him his testimony would be, the evidence of contradictory statements made by him is not

admissible.   Dunn v. Dunnaker, 87 Mo. 597; State v. Burks, 132 Mo. 373; Brown v. Wood, 19 Mo. 475; Chandler v. Fleeman, 50 Mo. 239; Grocery Co. v. Frick, 73 Mo. App. 128.

In Bullard v. Pearsall, 53 N. Y. 230, it is in substance said that when a witness disappoints a party calling him by testifying contrary to the expectations and wishes of such party, it is the conceded rule that the latter shall not, for the purpose of relieving himself from the effect of such evidence, be permitted to prove that the witness is of bad character and unworthy of belief, nor that he has on other occasions made statements inconsistent with his testimony at the trial when the sole object of such proof is to discredit the witness.   But the party calling the witness is not absolutely bound by his statement and may show by other witnesses that they are erroneous.   When a party calling a witness has been taken by surprise by unexpected testimony, questions may be asked by him of the witness for the purpose of probing his recollection, recalling to his mind statements he has previously made, and drawing out an explanation of his apparent inconsistency. This course of examination may result in satisfying the witness that he has fallen into error and that his original statements were correct and that it is calculated to elicit the truth.   It is proper as showing the circumstances which induced the party to call him.   Though the answers of the witness may involve him in contradictions calculated to impair his credibility, that is not sufficient reason for excluding inquiry.   In cases where the witness denies having made previous statements inconsistent with his testimony it would not be proper to allow such statements to be proved by other witnesses, but when the questions as to such previous statements are confined to the witness himself, they are admissible.   To the same effect are:   State v. Richards, 82 Wis., 172; Snell v. Gregory, 37 Mich. 500; McDaniels v. State, 53 Ga. 253; Coulter v. Express Co., 56

N. Y. 585; Becker v. Koch, 104 N. Y. 394; Wharton's Law Ev., secs. 549-550; Best's Prin. Ev., sec. 645.

State v. Benner, 64 Maine 267; Stearns v. Bank, 53 Pa. St. 490; Chism v. State, 70 Miss. 742, with doubtless other cases, hold that where a party in cross-examining makes his adversary's witness his own, by going into matters outside of the examination in chief of the witness, he will not then be allowed to impeach him, but that the party originally calling him may do so. But however well we may think these cases reasoned, they are not in accord with the great majority. It must be conceded that there is a great want of harmony in the adjudged cases as to whether or not the above exception ought to be recognized, but it seems to us that the majority of them are against it. And, as far as we are informed, no such exception has been recognized by any case in this State.

We think it sufficiently appears from what has been previously stated that the defendant was taken by surprise, or at least was disappointed by the testimony given by witness Dugger on his cross-examination, and that therefore a case is presented justifying the application of the general rule alluded to at the outset. Under this rule, it is plain that the defendant had the right to call the witness's attention to the paper signed by him and to ask of him whether he had not made certain statements to the persons named, for the purpose of refreshing his recollection and drawing out an explanation of his seeming inconsistency, to the end that he might be satisfied that he had fallen into error and that his written statement was correct. But the witness having denied that he made the inconsistent statements about which he was asked, it was not competent for the defendant to call other witnesses to contradict him, or, which is the same thing, to prove that he did make such statements. The defendant having introduced him and vouched for his veracity, could not be permitted, when he (the

witness) testified contrary to his expectation, to impeach him by evidence of statements made by him out of court contradictory of his testimony at the trial.

The plaintiff in rebuttal called the witness, Voglegesang, who testified that on the seventh of May, the day before the death of Galbreath, the local clerk, Dugger, showed him the warranty-of-good-health certificate of Galbreath, saying: "You are the second man who has paid up—here is David Galbreath's warranty of good health and I will put yours with it." To the giving of this testimony the defendant interposed the objection that the same "was irrelevant and immaterial." These objections of the defendant were so general that they saved nothing which is the subject of review by us, as may be seen by reference to Clark v. Loan Co., 46 Mo. App. 248, and the cases there collated. The testimony of witness Voglegesang must be regarded as having been received without objection. It therefore follows from the foregoing conclusions that the defendant's first assignment of error can not be sustained.

II. As to whether there was any evidence of a waiver of the warranty-of-good-health certificate adduced, we think it is needless to inquire as there is ample evidence in the record showing that such certificate was timely furnished to the defendant's clerk of the local camp, in conformity to the requirements of its by-laws. Even if we should find that there was no evidence of the waiver, the judgment would have to remain undisturbed for the reason that there is abundant other independent evidence to support it.

Whether or not the warranty-of-good-health certificate was a forgery, was an issue of fact in the case; that issue was determined by the court under the evidence, and that determination is conclusive on us.

III. The defendant's third assignment is that the trial court erred in overruling its demurrer to the evidence. Ap-

plying the rule that the defendant, by its demurrer to the evidence, admitted not only the truth of the facts disclosed by it but also every inference in favor of plaintiff which could be reasonably deduced from them, and we can not say that the court erred in overruling such demurrer.    Harris v. Railway, 89 Mo. 233.    In view of the testimony given by Mr. Voglegesang, who was clerk of the court in which this case was tried, to the effect that the defendant's local clerk had shown him the good-health warranty of Galbreath the day before the latter's death, and in view of the further fact that the local clerk himself testified that Galbreath, two days before his death, had paid his assessments and delivered to him his warranty-of-good-health certificate duly signed by him, how can we say there was no evidence—not a *scintilla*—offered ?

In any view which we have been able to take of the evidence, we think the defendant's third assignment can not be sustained.    The judgment will be affirmed.    *Ellison, J.,* concurs; *Broaddus, J.,* not sitting.