EDINA F. DAUBER, Respondent, v. SAMUEL JOSEPHSON, Appellant.

In The Kansas City Court Of Appeals, January 9, 1922.

1. NEGLIGENCE: Imputed Negligence: Negligence of Driver of Car Held Imputed to Owner Riding in Car. The negligence of one driving a motor car at deceased's request, and upon errand of deceased, is imputed to the deceased.

2. ————: Contributory Negligence: Driver's Unfamiliarity with Automobile which he was Driving at Time of Collision is not Sufficient to Hold Him Negligent as a Matter of Law. Where driver of automobile was experienced, had been driving for seven years, had owned and driven four makes of cars and experienced no sense of unfamiliarity whatever in driving a car purchased by deceased the day before collision, he was not guilty of negligence as a matter of law.

3. ————: ————: Municipal Corporations: Driver of Automobile and Deceased Riding with Him, in Failing to Look More than Once at Intersecting Street, not Negligent as a Matter of Law. Where an automobile driver, running at a speed of twelve (12) miles per hour, approaching an intersecting street, ninety (90) feet wide between the property lines, looked for automobiles in said intersecting street when he could see a distance of two hundred (200) feet, and there was an ordinance prohibiting a greater rate of speed than twenty (20) miles an hour, *held*, neither driver nor deceased riding with him were guilty of contributory negligence, as a matter of law, in proceeding to cross without looking again when they would have been able to see a greater distance as they would have passed entirely out of sphere of danger before any car traveling at a lawful rate of speed would cover the distance to the intersection.

4. ————: ————: ————: Even if Statute Required Driver to Look at Intersecting Street After Passing Obstructions, held, under evidence to Have Been Complied with. Even if section 7593, Revised Statutes 1919, providing that any person driving a motor vehicle, "approaching an intersecting highway or curve or corner, in the highway where the operator's view is obstructed, shall slow down to such speed that the motor vehicle can be readily stopped," required driver after passing obstruction to look to see if there is anything with which he may come into collision, it was complied with, as the automobile being driven was under control and driver looked for approaching cars when he was far enough past obstruction to see no automobile coming within area of danger had conditions been as he had a right to expect.

5. WITNESSES: Impeachment: Surprise: Testimony Given at Coroner's Inquest Contrary to that Given at Trial Does not Entitle Party Calling Witness to Impeach Him. Where a witness testified at coroner's inquest, concerning death of person killed in an automobile collision, that he did not imagine defendant was going more than eighteen (18) or twenty (20) miles per hour, and defendant did not talk to witness until case came to trial a year later, the testimony of the witness that defendant's car was being run at a speed of thirty (30) or thirty-five (35) miles per hour did not constitute such surprise as that term is used as entitled defendant to impeach the witness by proof of prior contradictory statements.

6. ————: ————: ————: Rule Stated as to When Party Calling Witness May Impeach by Showing Contradictory Statements. The general rule is that a party is not permitted to impeach his own witness, but when the latter has made contradictory statements to those given on the trial and the witness, or the adverse party to the cause, has entrapped or misled the party calling the witness

Dauber v. Josephson.

by some artifice, and by so doing has induced the party to call him as a witness and thereby have gained an advantage in the case over the party calling him, which the adverse party would not have had, had he not called witness, then under such circumstances the party calling the witness may impeach him by showing contradictory statements.

7. ———: ———: ———: **Admissibility of Impeaching Testimony Largely in Discretion of Trial Judge.** Whether impeaching testimony should be admitted is a matter largely in the discretion of trial judge.

8. **NEGLIGENCE: Instructions: Driver Approaching Intersection Where View is Obstructed and Automobiles were Likely to Cross at Any Time, Required to Keep Vigilant Lookout Ahead, and an Instruction Requiring Such Lookout Did not Require More than Ordinary Care.** Where an automobile driver approaches a street intersection where he knew that automobiles were likely to cross at any time, was thoroughly acquainted with the situation, having passed point of collision at least twice a day for a long time, and knew of an obstruction preventing drivers from seeing approaching automobiles, ordinary care required him to keep a vigilant lookout ahead for vehicles, and an instruction requiring such lookout did not require a higher degree of care than ordinary care.

9 ———: ———: **An Instruction Requiring Automobile Driver to Slacken Speed or Turn Car Aside Could not Have Been Misunderstood, as Matter Submitted Did not Tell Jury when Driver Should have Turned his Car Aside, but Expressly Required the Jury to Find that Failure to Turn Car Aside was Cause of Collision.** In an action for death where defendants failure to turn his automobile aside was pleaded in the petition, an instruction that if defendant "failed to use reasonable care to slacken the speed of his automobile or to turn the same aside, and that by reason of said conduct, his automobile was caused to collide with the automobile in which the deceased was riding, the verdict should be for plaintiff," could not have been misunderstood by the jury because the matter submitted did not tell the jury when defendant should have turned his car aside, but expressly required the jury to find that the failure to turn aside was the cause of the collision.

10. ———: ———: **The Question as to Whether Defendant Could have Avoided Collision by Turning his Automobile Aside Held for Jury.** Where the evidence showed that defendant traveling forty-five (45) miles an hour did nothing to avoid the injury but thought that the other driver would turn to the right and pass behind him, the question as to whether defendant could have avoided collision by turning his automobile aside *held* for the jury.

11. **INSTRUCTIONS: Where Correct Instructions are Given Covering a Certain Point, the Defendant Desiring Jury to be Instructed more Fully Thereon Should Have Requested an Instruction Covering the Same.** In an action for death in collision at street intersection, where automobiles were likely to cross at any time and the view was obstructed, an instruction requiring defendant to keep a vigilant lookout ahead and an instruction requiring the driver of deceased's car to use only ordinary care were both correct, and if defendant desired the jury to be instructed any more fully upon what constituted ordinary care on the part of the other driver, he should have asked such an instruction.

12. ————: **Instruction Properly Amended so as to Impose Duty of Ordinary Care Instead of Absolute Duty.** In an action for death the court properly amended an instruction requested by defendant so as to provide that driver of deceased's car was required to use ordinary care in handling his car, and in looking for automobiles on an intersecting street, as the instruction as requested made these duties absolute and amounted to an instruction in the nature of a demurrer to the evidence.

13. ————: **Instruction as to Duty to Exercise Care by Driver Held not Misleading When Read in Connection With all of the Other Instructions.** Where an instruction required the driver of deceased's car to look and listen for automobiles on an intersecting street, and as to his right to presume that vehicles thereon would be driven with reasonable care and at a reasonably careful rate of speed, it was not misleading because of its faliure to say anything of the duty of deceased, when read in connection with the other instructions that the driver's negligence, if any, was imputed to deceased, and that it was the duty of the deceased, and the driver as well, to exercise ordinary care.

14. ————: **An Instruction in Action for Damages Sustained in Automobile Collision Held not to be too Broad, Comment on Evidence or Erroneous, when Read in Connection with All of the Other Instructions.** An instruction that it was the duty of defendant approaching a crossing to run his automobile at a reasonably careful rate of speed and that if he ran the same at such place at a dangerous rate of speed and greater than that at which an automobile would have been driven by an ordinary prudent person, he was guilty of negligence, is not a comment on the evidence, did not attempt to cover the entire case, nor to direct a verdict and is only one of a long series of instructions, when read together contains a complete exposition of the law, and under such circumstances was not erroneous as being too broad, capable of being understood or as calling attention to plaintiff's rights in the abstract without mentioning his corresponding duties.

Dauber v. Josephson.

15. ————: **Defendant Held to Have Joined in Error Contained in Instruction Which is the Converse of One Given for Defendant.** Where an instruction is the converse of one given for defendant, if there is any error in it, the error was joined in by the defendant.

16. ————: **Instruction Held to Sufficiently Require Jury to Find That Deceased's Automobile Entered upon Intersection before Defendant's.** An instruction that if deceased's "automobile was upon the street intersection and while there defendant drove his automobile toward and across the street intersection," etc., required the jury to find that deceased's automobile entered upon the intersection before defendant's automobile.

17. ————: **Instruction Defining Term ''Intersection'' Properly Refused as Unnecessary.** The court did not err in refusing to give an instruction which defined the term "intersection," as the word "intersection" is not a technical term, but one of common meaning and needed no definition.

18. ————: **Instruction Defining Term ''Intersection'' Properly Refused as Misleading.** In an action for death in collision at street intersection, an instruction defining the term "intersection" to mean the intersection of the curb line on the south side of a certain street with the curb line on the west side of another street was properly refused as being misleading.

Appeal from the Circuit Court of Jackson County.— *Hon. O. A. Lucas*, Judge.

AFFIRMED.

*Russell Field, Rollin E. Talbert* and *J. C. Rosenberger* for respondent.

*A. N. Gossett, Cyrus Crane* and *Hugh E. Martin* for appellant.

BLAND, J.—This is an action for the wrongful death of plaintiff's husband. There was a verdict and judgment in favor of plaintiff in the sum of $7,000 and defendant has appealed.

Defendant's first point is that his demurrer to the evidence should have been sustained. The facts, taken in their most favorable light to plaintiff, show that de-

ceased was killed on November 13, 1918, in an automobile collision at the intersection of Twenty-fifth street with Pennway boulevard, in Kansas City, Missouri. Twenty-fifth street runs east and west and Pennway boulevard north and south. The collision occurred in the morning; the sun was shining and the day fair. The car in which deceased was riding at the time he was killed had been purchased by him the day before. At the time of the collision it was being driven by Dr. Loomis with whom deceased was visiting at Merriam, Kansas, a suburb of Kansas City, Missouri. The car was proceeding east on Twenty-fifth street on the south side of the center line thereof at a rate of from twelve to fifteen miles per hour. Dr. Loomis was on the north side of the car and deceased seated to his right in the front seat. They were engaged in a conversation. The view to the south of the occupants of deceased's car was obstructed by an embankment, board fence and vegetation on the south side of Twenty-fifth street so that they could not see to the south though there was nothing to obstruct their view from the car as the curtains were not up. The obstruction extended to within a foot of the west street or property line of Pennway boulevard where it made a right angular turn extending some distance toward the south so that the occupants of deceased's car could not have a full view south on Pennway boulevard until they arrived at a point east of said obstruction.

The evidence shows that there is a grade of 6.1 feet on Pennway boulevard between Twenty-fifth and Twenty-sixth streets, the latter street lying to the south of the former, which is 35.9 feet in width; that the intersection of the two streets is at the bottom of two hills, one rising to the south and the other to the north. The north hill has a grade of 3.5 per cent and Pennway here runs over a viaduct above railroad tracks. Deceased was approaching Pennway on an upward grade of 5.3 per cent. The distance between the obstruction and the property line on Pennway is one foot; the sidewalk

space on the west side of Pennway occupies eight feet, the roadway between the curb of the sidewalk on the west side and the one on the east side of Pennway is thirty-six feet and the sidewalk on the east side of Pennway is eight feet; on each side is a parkway between the sidewalk and the curb of nineteen feet, making a total distance of ninety feet between the property lines of Pennway boulevard south of Twenty-fifth street or ninety-one feet between the obstruction and the east property line. The distance between the north curb of Twenty-sixth street and the south curb of Twenty-fifth street is six hundred and fifty-one feet.

Dr. Loomis testified that in approaching Pennway boulevard he looked toward the south at a point from 150 to 200 feet west of the west property line of Pennway boulevard. Taking this testimony in its most favorable light to plaintiff, we will say that he looked south at a point 200 feet distant west of the west property line of Pennway boulevard. There is testimony by a surveyor who made a survey of the location and the vicinity of the collision that traveling as deceased was it was not until he arrived at a point 6.1 feet west of the west property line of Pennway boulevard that he could see the middle line of Pennway 200 feet to the south, so it must have been at this point on Twenty-fifth street that Dr. Loomis looked south. After so looking Dr. Loomis proceeded without further looking at the same rate of speed and in the same direction and in the same manner toward the east until he reached about the middle of Pennway when defendant driving his automobile north on Pennway and on the east side thereof arrived and, as the doctor testified, "Soon after passing the middleway point of Penn Street I suddenly saw something that looked—seemed to appear above me as a shadow and passed in front of my eyes. I immediately, instinctively turned the wheel to the left and that is the last I knew until I regained consciousness lying in the street." After the collision deceased's car was swung

around and turned over twice, landing bottom side up on the catch basin at the southeast corner of the intersection. Defendant's car weighed about 4000 pounds, deceased's very much lighter. Deceased died almost immediately.

There is testimony that deceased's car ran into defendant's but in passing upon this point we do not deem it material as to which car ran into the other. The photographs found in the record constitute evidence that is susceptible to the inference that the right front end of deceased's car was struck by defendant's car near the left rear fender of the latter, causing deceased's car to be swung around and turned over. Defendant's car was turned completely around and ran up the hill toward the north a distance of over 132 feet, where it stopped. Defendant's right rear wheel was broken, this was evidently caused by the swinging around of his car.

The evidence shows that defendant approached the point of collision silently; that the last 300 feet of his travel was made at a rate of speed of 45 miles per hour; that he did not slacken his speed at any time. He testified that he was coasting and "just as I got to the bottom of the hill I noticed that a car was driving there and I just kind of curved there a little to make the next hill, put on a little more gas there and in place of missing—in place of him turning to the right and missing me it seems like that he turned with me." He testified that he did not see deceased's car until after he got to the intersection. The evidence shows that the collision occurred slightly northeast of the intersection of the center lines of the two streets; that both Dr. Loomis and defendant were acquainted with the speed and traffic regulations governing crossings of streets in Kansas City, Missouri, and that both knew that there was considerable traffic along both of these streets. Defendant testified that as he came down Pennway the whole street was spread out before him.

The contention that defendant's instruction in the nature of a demurrer to the evidence should have been

given is based upon the alleged unfamiliarity of Dr. Loomis with the car he was driving and the failure of the doctor to look after having passed the obstruction at the southwest corner of Twenty-fifth street and Pennway where he could have had a full view of Pennway to the south for a distance of at least 651 feet. The evidence shows that Dr. Loomis was driving the car at deceased's request and that they were on an errand of deceased. The negligence, if any, of Dr. Loomis is therefore to be imputed to the deceased. Dr. Loomis testified that deceased said nothing in reference to the operation of the car as it approached and crossed Pennway. There is no contention that defendant was not negligent but defendant's whole argument in support of this point is that deceased was guilty of contributory negligence as a matter of law.

The petition pleads that defendant was negligent in violating the speed ordinance of Kansas City which provided for a maximum speed of twenty miles per hour at the place of the collision and that "in passing any street intersection, crossing or cross walk within the limits of Kansas City, Missouri, the rate of speed for driving shall not exceed ten miles per hour when any person or vehicle is upon said intersection, crossing or cross walk, with whom or with which there is or may be dangerous collision.

The evidence shows that Dr. Loomis was an experienced driver of automobiles; that he had been driving them for seven years and had owned and driven four makes of cars other than the one he was driving on the day of the collision; that while he was unable to remember at the time of the trial, which was had on June 17, 1920, the exact location of the various appliances to be manipulated, or how they were handled, by the driver of deceased's car, he testified that he experienced no sense of unfamiliarity whatever in driving the car and had no trouble in handling the same; that he had driven the car at least seven miles and had used the

brakes twice in that time and knew in what distance he could stop the car going at the rate of speed at which he was going at that time. He was also in the car when it was demonstrated to the deceased on the day before the collision.

We cannot say that Dr. Loomis in failing to again look after he could see to the south 200 feet was guilty of contributory negligence as a matter of law. Dr. Loomis was aware of the fact that the ordinance prohibited defendant from proceeding at a greater rate of speed than twenty miles per hour. Whether he was guilty of contributory negligence as a matter of law would depend upon whether he had time to cross the street and get out of the path of north bound automobiles on Pennway before being struck by such a car that was proceeding at the rate of twenty miles per hour or less, had one been coming 200 feet away and just beyond his vision at the time he last looked for cars. He was proceeding at the rate of twelve miles per hour. At the time he looked he was 6.1 feet west of the west property line of Pennway; from that point to the place of the collision was approximately fifty-one feet. For Dr. Loomis to have entirely crossed the roadway of Pennway he would have had to have gone a distance of approximately seventy feet. Of course, Dr. Loomis, going at the rate of twelve miles per hour, would pass entirely out of the sphere of danger while a car coming from the south at the rate of twenty miles per hour on Pennway would cover a distance of 200 feet, therefore, neither he nor deceased was guilty of contributory negligence as a matter of law. [Draper v. Kansas City Rys. Co., 199 Mo. App. 485; Strauchon v. Met. St. Ry. Co., 232 Mo. 587; Calhoon v. Mining Co., 202 Mo. App. 564; O'Connor v. Railway, 94 Mo. 150, 157; Gratiot v. Railroad, 116 Mo. App. 454; Sullivan v. Railroad, 117 Mo. 214, 222; O'Neal v. K. C. Rys. Co., decided by this court but not yet officially reported.]

In this connection defendant calls our attention to section 7593, Revised Statutes 1919, which provides that

any person driving a motor vehicle "approaching an intersecting highway or curve or corner in the highway where the operator's view is obstructed, shall slow down to such speed that the motor vehicle can be readily stopped." It is insisted that "this, of course, implies that a man driving an automobile, after he gets by the obstruction will look to see if there is anything with which he may come into collision." If this is what is meant by the statute, then it was complied with by Dr. Loomis. The car he was driving was under control and he looked when he was far enough east of the obstruction to see no automobile coming within the area of danger had conditions been as he had a right to expect.

It is insisted that the court erred in refusing to permit defendant to read the testimony of his witness Dunn, given at the coroner's inquest held shortly after the collision. The facts in reference to this matter are that defendant without having previously talked to his witness Dunn between the time of the inquest and the trial, which was over a year after the inquest, placed him on the stand and asked him a number of questions, the witness giving valuable testimony in defendant's behalf except in one particular. The witness testified that he was coming north on Pennway in his car and behind that of defendant and that he saw the collision. When asked if he observed the speed of defendant's car, he testified, "I think that Mr. Josephson's car was going in the neighborhood of about thirty or thirty-five miles, probably, at the most, per hour." It seems that he had testified at the coroner's inquest as follows: "I don't imagine Mr. Josephson was going any more than eighteen or twenty miles per hour." The court permitted defendant, in order to refresh the memory of the witness, to call his attention to what he had testified at the coroner's inquest in reference to this matter and to ask the witness if he had not testified in the manner mentioned at the coroner's inquest. The witness answered that he did not remember, it having been so long ago, whether he had made the statement at the

coroner's inquest or not. Defendant attempted to introduce the testimony given by the witness at the coroner's inquest in reference to this matter but upon objection by plaintiff that he was attempting to impeach his own witness, the offer was refused by the court and this is assigned as error. We think there was no error in the action of the court. The general rule is that a party is not permitted to impeach his own witness but when the latter has made contradictory statements to those given on the trial and the witness, or the adverse party to the cause, has entrapped or misled the party calling the witness by some artifice and by so doing has induced the party to call him as a witness and thereby to gain an advantage in the case over the party calling him, which the adverse party would not have had had he not called the witness, then under such circumstances the party calling the witness may impeach him by showing contradictory statements. [Beier v. St. Louis Transit Co., 197 Mo. 215, 235; State v. Drummins, 274 Mo. 632, 647; Creighton v. Modern Woodmen, 90 Mo. App. 378; Imhoff v. Co. v. McArthur, 146 Mo. 371.]

It is quite apparent that there was no trick or artifice on the part of anyone in connection with this matter. The testimony of the witness at the coroner's inquest was of a very indefinite nature but the apparent change that he made in it on the trial of the cause was no doubt unexpected on the part of the defendant but did not constitute surprise as that term is used in connection with the matter under consideration. The cases cited by the defendant are clearly not in point. A mere reading of the facts in the case of Clancy v. St. Louis Transit Co., 192 Mo. 615, shows that that case is not applicable to the facts in this case. In the other cases cited by defendant the appellate court upheld the trial court in allowing impeaching testimony, and it must be borne in mind that whether impeaching testimony should be admitted is a matter largely in the discretion of the trial judge. In the case of Noah v. Mercantile

Co., 231 S. W. 300, cited by the defendant, the question was the matter of the impeachment of plaintiff's witness.

It is insisted that the court erred in giving plaintiff's instruction No. 1, for the reason that it told the jury that defendant was required "to keep a vigilant lookout ahead for other vehicles which were or might come upon the street intersection where the collision occurred." It is said that this required a higher degree of care than ordinary care and that the degree of care that defendant was required to exercise was the latter degree. The evidence shows that defendant knew that automobiles were likely to cross Twenty-fifth street at any time; that he was thoroughly acquainted with the situation, knew of the obstruction present and had passed the point of collision at least twice a day for a long time. Under such circumstances ordinary care required defendant to keep a vigilant lookout ahead for vehicles. [Sluder v. Transit Co., 189 Mo. 107, 136; McFern v. Gardner, 121 Mo. App. 1, 11; Johnson v. Traction Co., 176 Mo. App. 174, 184, 188; Hoagland v. Kansas City Rys. Co., 209 S. W. 569.] What was said in reference to an instruction of this kind in the case of Theobald v. Transit Co., 191 Mo. 395, 438, 441, was not concurred in by the majority of the court.

Plaintiff's instruction No. 1 tells the jury, among other things, that if defendant "failed to use reasonable care to slacken the speed of his automobile or to turn the same aside, if so, and that by reason of the aforesaid conduct of defendant his automobile was caused to collide on said street intersection with the automobile in which the deceased was riding," etc. their verdict should be for plaintiff. It is insisted that the court erred in using the terms "or to turn the same aside, if so," as the matter as submitted was too broad, that is to say, it did not tell the jury when defendant should have turned his car aside or mentioned "the location of the automobiles and other elements which would or should call for a necessity to change the course of the automobile

and that by changing it the accident would have been avoided which this instruction does not contain.'' The matter of defendant's failing to turn aside was pleaded in the petition and the jury could not have misunderstood what was meant. The instruction has the jury to expressly find'that the failure to turn aside was the cause of the collision.

It is also claimed that there is no testimony that the collision could have been avoided if defendant had turned his car aside. We are unable to agree with this. The evidence shows that defendant had a clear view down the street and that he was going 3.75 times as fast as deceased's automobile. Deceased traveled fifty-four feet from the time he emerged from the point of obstruction to the point of collision while defendant traveled 202 feet with plaintiff in full view and a collision was imminent. Defendant's own testimony shows that he did nothing to avoid the injury but that he though that plaintiff would turn to the right and pass behind him. It was for the jury to say whether defendant could have avoided the accident by turning his automobile under the circumstances. The instruction has the jury find that Dr. Loomis was in the exercise of ordinary care as well as deceased. It submits to the jury whether the automobile in which deceased was riding was being driven with ordinary care ''upon and across said street intersection.''

Plaintiff's instruction No. 5 is as follows:

''The court instructs the jury that while it was the duty of Mr. Loomis before going upon the street intersection to look and listen for automobiles which were or might be approaching Twenty-fifth street from the south, yet Mr. Loomis in driving across Penn street at the intersection in question had the right to presume. unless he knew, or, by the exercise of ordinary care could have known to the contrary that any vehicle coming from the south on Penn street would be driven with reasonable care and at a reasonably careful rate of

speed, and said Loomis had the right to act upon said presumption.''

In this connection defendant points out that the care required of Dr. Loomis by this instruction was only ordinary care and that it was unfair for the court to tell the jury in plaintiff's instruction No. 1 that defendant was required to keep a vigilant lookout and in plaintiff's instruction No. 5 for Dr. Loomis to use only ordinary care. Both instructions were correct and if defendant desired the jury to be instructed any more fully upon what constituted ordinary care on the part of Dr. Loomis under the circumstances, he was at liberty to ask an instruction covering this point. It is true that the court amended defendant's instruction No. 5 so as to provide that Dr. Loomis was required to use ordinary care in handling his car and in looking for automobiles coming from the south, but these amendments were necessary as the instruction as requested made these duties absolute and amounted to an instruction in the nature of a demurrer to the evidence. While plaintiff's instruction No. 5 says nothing of the duty of Dauber, it does not purport to cover the entire case and taken in connection with all of the instructions, is not misleading. Defendant's instruction 1-A tells the jury in effect that Dr. Loomis's negligence, if any, was imputed to Dauber and his instruction No. 8 instructs them that it was Dauber's duty to exercise ordinary care as well as Dr. Loomis's.

It is insisted that plaintiff's instructions Nos. 2 and 3 are a comment upon the evidence. Instruction No. 2 tells the jury that it was the duty of defendant approaching the crossing to run his automobile at a reasonably careful rate of speed and if they found he ran his automobile at such place at a dangerous rate of speed and greater than that at which an automobile would have been driven by an ordinarily prudent person, defendant was guilty of negligence. It is said that this instruction calls attention to plaintiff's rights in the abstract with-

out mentioning his corresponding duties. We think that the instruction is not subject to this criticism. It certainly is not similar to the instruction criticized in Moffatt v. Link, 229 S. W. 836, 843. This instruction did not attempt to cover the entire case nor to direct a verdict and is only one of a long series of instructions given on behalf of both parties. In reading them all together they contain a complete exposition of the law in reference to the case and covered every phase. Under such circumstances the instruction is not erroneous. [McKinney v. Laundry Co., 198 Mo. 386, 397.] The jury would understand that there could be no recovery for a collision at Twenty-sixth street. No such collision was claimed. Instruction No. 2 is not too broad in any sense, the jury could not misunderstand or misconstrue its meaning.

Instruction No. 3 is the converse of defendant's instruction No. 6 and therefore, if there was any error in it, the error was joined in by the defendant. We think this instruction requires the jury to find that deceased's automobile entered upon the intersection before defendant's automobile. It says that if deceased's "automobile was upon the street intersection and while there . . .. defendant drove his automobile toward and across the street intersection," etc.

Defendant's instruction No. 22 was properly refused. It would convict Dr. Loomis of contributory negligence as a matter of law for not looking a second time. There was no error in the refusal of the court to give defendant's instruction A, which defined the term "intersection" to mean "the intersection of the curb line on the south side of 25th Street with the curb line on the west side of West Pennway." The word "intersection" is not a technical term but one of common meaning and needed no definition. The instruction as drawn would have been misleading.

The judgment is affirmed. All concur.