HELENE J. KALEY v. D. J. HUNTLEY and CYNTHIA HUNTLEY, Appellants.—63 S. W. (2d) 21.

Division One, August 24, 1933.

*Cowgill & Popham* and *John F. Cook* for appellants.

*James L. Roberts, Inghram D. Hook* and *Paul C. Sprinkle* for respondent.

HAYS, J.—While riding gratuitously as a guest in an automobile owned by defendant D. J. Huntley and driven by his codefendant and daughter, Cynthia Huntley, the plaintiff, Helene J. Kaley, received painful and substantial personal injuries through the alleged negligence of the driver in the operation of the car. In the trial below defendants had a verdict which the trial judge later set aside and granted a new trial on the specified ground of error in the instructions. From that order the defendants appealed.

There were several specifications of negligence (in that defendants

failed to exercise the highest degree of care) charged against the defendants in the petition, but the only one on which plaintiff tendered instructions was, as set out in the petition and in plaintiff's main instruction, substantially as follows: That in operating said automobile and driving the same off the highway and down an embankment and into a collision with a tree, the defendants were negligent in that just prior to the time said car was so driven off the road the driver thereof was negligently failing to look ahead but was talking to her codefendant, who was seated on the back seat. The plaintiff sought damages in the sum of twenty-five thousand dollars.

The defendants answered jointly, (1) by general denial; (2) by plea of contributory negligence, in that (a) plaintiff herself participated in said conversation, if any, and in conversing with other occupants of the car, thereby diverting the attention of the driver; (b) that plaintiff was fully aware of the driver's alleged turning her head and of her alleged non-observance of the roadway; and (3) that plaintiff failed to make any protest or complaint or to warn the driver or other occupants of the car of the alleged dangerous conduct and attitude of the driver.

It was admitted on the trial that defendant D. J. Huntley was the owner of the car. The main contentions of the parties are those concerning (1) the denial of the defendants' motions, offered at the close of plaintiff's case in chief and at the close of the whole case, for judgment on the pleadings for want of reply filed to defendants' answer; (2) the propriety of an accident instruction given for defendants; (3) the insufficiency of plaintiff's case to sustain any verdict for her, which would render harmless all errors made in the trial; and (4) the instruction given and one refused upon the degree of care which the law imposed upon the defendants in the operation of the car.

The contention of the defendants that, no reply having been filed, the trial court committed error in each instance in overruling said motions offered in turn should be and is denied. Charged with knowledge of the state of the pleadings, instead of calling the attention of the trial court before the trial had got under way to the absence of a reply, defendants took their chances of ambushing the plaintiff and lost. Having participated in the trial throughout, without being put to apparent or claimed disadvantage, and seeking here to sustain the verdict they gained, defendants manifestly are in no position to complain of error in the ruling of said motions.

Defendants' next contention is that plaintiff's case as shown by the record is wholly insufficient to support any verdict that might be rendered in her favor and therefore it was error to grant a new trial. In ruling this contention and others remaining it seems advisable to undertake to summarize the evidence as follows:

On the day of the casualty, in the month of May, defendant Mr. Huntley, driving his own car, took his daughter, Cynthia, to a picnic given by his employer as an outing for the latter's employees, including Mr. Huntley who, at the request of his employer, had in charge the matter of the transportation of the guests going from Kansas City to the picnic grounds and returning. About midafternoon a guest, Miss Geary, became ill and desired to be conveyed to her home. Defendant Miss Huntley proffered to take her home and also invited the plaintiff and a Miss Parsons to go along with them for the ride to Miss Geary's home and back to the picnic grounds, all these young ladies being mutual acquaintances. The daughter reported to the father the necessity for the trip and the arrangements made. In giving his consent to the arrangement the father expressed his intention of driving the car himself, but yielded to the daughter's request that she might drive and permitted her to take the driver's seat while he took a place on the back seat with plaintiff and Miss Geary, Miss Parsons occupying the front seat and being on the driver's right. They proceeded to take Miss Geary home, where she remained. Returning, the driver presently finding herself in a *cul-de-sac*, necessarily retraced part of her course for a short distance and then entered upon Eighty-ninth Street. This small mishap caused among the occupants of the car some merriment in which all joined for the moment. Mr. Huntley later, and shortly before the accident, undertook to tease his daughter for having to retrace her course, saying he could have done better himself, though in testifying at the trial he said his daughter was a skilled and excellent driver of much experience; in fact a better driver than himself. Proceeding on Eighty-ninth Street to Warnall Road, the car was turned north on Warnall and had proceeded perhaps 150 feet when it left the eighteen-foot paved roadway and, traveling and slipping on the forty-five-degree incline of the shoulder of the road—which at the top was of a width of six inches to a foot and covered with grass—a distance of twelve to fifteen feet in a northeastwardly direction down into the side ditch and against a tree. The car while on Warnall Road was running at a rate of speed estimated at from twenty to twenty-five miles an hour. The day was bright and sunshiny. There were no obstructions and no traffic on the road at the time of or before the accident. The brakes were in perfect condition before and after the accident, and nothing was found to be wrong with the steering gear or any other part of the mechanism of the car.

The plaintiff testified that shortly after the car turned north on Warnall Road the driver turned her head sideways and was talking to her father seated in the back seat, when Miss Parsons screamed to Miss Huntley. In a couple of seconds the car had left the road and crashed into the tree. Down to the time of the driver's turning

her head as stated she had apparently driven well and expertly, at a moderate rate of speed, and just before the accident occurred it was not apparent to plaintiff, she said, that an accident was in prospect or about to occur, and for that reason she made no protest and gave no warning to the driver concerning the latter's manner of driving. The general conversation or merriment in which she had previously participated had, it seems, come to an end before the incident which immediately preceded the accident.

Miss Parsons testified that the car was proceeding at from twenty-two to twenty-five miles an hour on Warnall Road. Miss Huntley was talking back and forth to her father. She turned around to say something to her father and the car ran off the road down an incline some twelve feet and struck the tree.

The defendants testified in their own behalf. The father gave this version of the accident: "After we had proceeded a short distance on Warnall we were all talking and all at once Miss Parsons hollered and said, 'Your car is off the road,' and the car started slipping toward the gutter and, when it got to the bottom of the gutter, hit the tree. I don't remember that my daughter was turning around looking back in the car before this thing happened. My daughter was driving north on Warnall and we were all talking. I said something to her and just as she started to reply or had replied Miss Parsons hollered. The car was probably six inches off the road and the brakes wouldn't stop the car; it was just like trying to stop a car that is skidding on ice—you just have to let them go until they stop."

Miss Huntley's version differs slightly from that of her father. She was twenty-six years old when the trial occurred. She said that "while going at not over twenty I slipped off the road and I put on the brakes but they wouldn't hold. I was looking straight ahead from the time I turned on Warnall and up to the time this thing occurred never looked in any other direction. I don't know where the car was in relation to the center line of the concrete road. I must have been nearer the edge of the road than I realized. The front wheel was off on the grass when I applied the brakes. Just before the accident occurred I was talking to my father. He referred to (my previously retracing my course). I didn't answer him a word that I can remember. The car was going off as he finished."

■ With respect to defendants' insistence that the evidence of negligence on the part of the defendants is not sufficiently substantial to support any verdict that might be rendered for plaintiff, we think it manifest from the summary, supra, that the plaintiff made a case worthy of submission to the jury upon the issue of causative negligence on the part of the defendants, and that a recovery by her is not, as a matter of law, barred by contributory negligence on her part.

First, as to causative negligence of the driver of the car. It is self-evident that it was the duty of Miss Huntley as driver of the automobile to keep a lookout upon the highway in the direction the car was going. [Eisenman v. Griffith, 181 Mo. App. 183, 167 S. W. 1142.] And on the clear unobstructed road she could easily have seen where the car was running with reference to the edge of the road. She was not only required to look, but to look in such an observant manner as to enable her to see the conditions which a person in the exercise of due care and caution for his own safety and the safety of others, would have seen under like or similar circumstances. [Pratt v. Kistler, 72 Mont. 356, 361; 233 Pac. 600.] And it is as much negligence to fail to see that which can be observed by due care as it is negligence not to look at all. [Bibby v. Pacific Elec. Railroad Co., 58 Cal. App. 658, 662, 209 Pac. 387.] The driver has no right to assume that the car will keep to the road and not veer off it without himself giving the car attention and guidance. If Miss Huntley was looking ahead, as she said she was, she is presumed to have seen what she ought to have seen, and actual discovery by her is not necessary. [Richards v. Palace Laundry Co., 55 Utah, 409, 186 Pac. 439.] ■■ It is for a jury to say whether under all the circumstances she used due care. On a somewhat similar state of facts, a finding that a driver's turning his head to speak to occupants of the back seat, one of whom was an invited guest, amounted to negligence where the car was going fast on an icy road and thereupon skidded around, was held warranted. [Bolton v. Wells (N. D.), 225 N. W. 791.] The mere fact that a motor truck swerved from the street and ran into the sidewalk and injured a pedestrian is some evidence of negligence, if not gross negligence, of the driver. [Rogles v. United Rys. Co. (Mo.), 232 S. W. 93.]

■■ ■■ Defendants further contend that the case was not submissible as against Mr. Huntley, because no relationship of agency as between him and his daughter was shown, and also, incidentally, that one of plaintiff's given instruction was erroneous in that by it the jury were told that a presumption of agency obtained. It is true, as contended, that presumptions were not in the case when it was submitted to the jury, and presumptions should not have authorized in the instructions. [State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S. W. (2d) 638.] However, in the case at bar there was substantial factual proof, in addition to the mere ownership of the car, and from such substantial proof the relationship of principal and agent was properly deducible. The fact alone of ownership of the car, upon which a procedural inference, or rebuttable presumption might arise and be sufficient to take the case to the jury in the absence of evidence in rebuttal thereof, was in the instant case supplemented by circumstances of probative value, namely: The transportation of the picnickers was an enterprise undertaken by Huntley.

■ He accepted the guests here involved as his own, and, instead of driving as he wished and had intended to do, he committed the actual operation of the car to his daughter. He had the right of control over the operation of the car in matters of detail; the operator was his servant *pro hac vice* and he is chargeable with the operator's' negligence. The negligence of a chauffeur is imputable to his employer or master who is riding with him; and this is true regardless of whether the latter is so situated that he can give directions. [1 Berry, Law of Automobiles (6 Ed.), sec. 665; Dauber v. Josephson, 209 Mo. App. 531, 237 S. W. 149; Threadgill v. United Rys. Co., 279 Mo. 466, 476, 214 S. W. 161.]

■ In support of the claimed bar of contributory negligence defendants cite cases involving obvious obstructions and hazards upon the roadway, the dangers of which were immediately perceptible to the persons sought to be charged with contributory negligence, such as—on-coming street cars (Smith v. Wells, 326 Mo. 525, 31 S. W. (2d) 1014; Leapard v. K. C. Rys. Co., 214 S. W. 268), or trains approaching and heralded by warning signals and gongs (Sullivan v. A. T. & S. F. Ry. Co., 317 Mo. 996, 297 S. W. 945); or cases of a pedestrian heedlessly crossing a street (Goggin v. Wells, 273 S. W. 1107), or falling into a hole in a sidewalk (Sloan v. American Press, 327 Mo. 470, 37 S. W. (2d) 884), or stepping into an open elevator shaft (Gray v. Levy, 48 S. W. (2d) 20). The want of application of these citations is so apparent that this mere noting of them will suffice.

We regard the following general statement of the duty of a guest as laid down in 1 Berry on The Law of Automobiles (6 Ed.), section 665, as correct and as applicable to the duty of the plaintiff in the situation in which she was placed:

"When dangers, which are either reasonably manifest or known to an invited guest, confront the driver' of a vehicle, and the guest has an adequate and proper opportunity to conduct or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery." [See, also, ·Smith v. Ozark Water Mills Co., 215 Mo. App. 129, 238 S. W. 573; Corn v. Kansas City, etc., Railroad Co. (Mo.), 228 S. W. 78; Boland v. St. Louis-San Francisco Ry. Co. (Mo.), 284 S. W. 141.]

■ Plaintiff's situation and duty must be considered as of the time the danger presented itself. The brief interval between the driver's turning her head aside, or at least becoming inattentive to her driving, and the collision of the car with the tree, was said to have been of no more than three seconds' duration. The car's leaving the road and crashing against the tree was an almost instantaneous happening. Miss Parsons said she screamed while the driver's head was momentarily turned. Huntley stated substantially that

the scream occurred before or immediately after the daughter answered a remark of his. Plaintiff was seated behind the driver, with her view more or less obstructed. Had she seen at the same instant with Miss Parsons whose view was unobstructed she could have discovered and done no more than the latter did whose warning was of no avail. Plaintiff was in no position to assist the driver in the operation of the car which even then was beyond control. Quite certain it is that there was no contributory negligence barring recovery as a matter of law.

█ Nor in the light of the evidence was the casualty one that authorized the giving of an instruction on the theory of accident, and it was error upon the part of the trial court to give, as it did at the instance of the defendants, an instruction on that theory. The cause of the casualty was not unknown; it was and is manifest. It was the car's running off the road. It had run off before the driver realized it was going to do so. Nothing untoward happened to it before it ran off to cause it to do so. It left the road because it was unguided or improperly guided by the driver—the one or the other —the driver's act of commission or omission. There was no other cause shown or claimed. There was no derangement in the mechanism or erratic or perverse action of the car itself shown as determining or controlling its course in going off the pavement. To bring a casualty within the legal meaning of the term accident an "essential requirement is that the happening be one to which human fault does not contribute;" and "when, as here, the misadventure resulted from known actions of known persons and things, the giving of an accident instruction is error by the great weight of authority in this State." [Hogan v. Kansas City P. S. Co., 322 Mo. 1103, 19 S. W. (2d) 707, l. c. 712-713.]

█ We come now to the most serious question in the case, the degree of care due plaintiff by defendants in operating the automobile so as not to endanger plaintiff's person. The question arises here upon the instructions. The court nisi instructed at the instance of the defendants and again of its own motion upon ordinary care, and refused an instruction offered by plaintiff hypothesizing the highest degree of care, as the measure of defendants' duty in the premises. This is a case of first impression in this court upon the question presented. It is to be determined by the statute, which supersedes rules of common law. Our statute, Revised Statutes 1929, section 7795, amendatory in certain particulars not material here of Missouri Laws 1921, First Extra Session, page 91, section 19, reads, after certain omissions, as follows:

"Every person operating a motor vehicle on the highways of this State shall drive the same in a careful and prudent manner, and shall exercise the highest degree of car . . . so as not to en-

danger the property of another or the life or limb of any person. . . ."

The Automobile Statute of 1911 (Laws 1911, pp. 329, 330, sec. 12, par. 9) was considerably narrower in the scope of its language than the present statute quoted supra. We construed the former in the cases of Threadgill v. United Rys. Co., supra, and Jackson v. Southern Bell Tele. Co., 281 Mo. 358, 219 S. W. 665, and expressed on page 370 of 281 Mo. this general rule:

"It is thus seen that the statute establishes a general rule for all persons operating automobiles upon the public roads and highways not only to protect the lives and property of others on or traveling over such roads and highways, but also to protect such drivers themselves and the persons traveling with them."

This rule was in each case declared to require of the driver the highest degree of care. The rule was applied in each in relation to the driver's negligence directly contributing to cause his own injury. The same rule has been uniformly applied in subsequent similar cases by our court and the several Courts of Appeals, whether arising under the former law or the present statute. And the same rule has been applied to cases coming within the humanitarian doctrine. While the holding in the cases just cited would be *obiter* so far as concerns its application to a case such as the one at bar, and while the rulings incident to the application of the humanitarian rule are likewise not in point, yet all these serve to illustrate the judicial purpose to give the statute the broad, all-inclusive meaning the language itself imports. There is really no room for construction in the legal sense of the term. The language is perfectly plain, and sweeping. The scope of the statute was well expressed in Gude v. Weick Undertaking Co., a case within the humanitarian rule, 322 Mo. 778, 783, 16 S. W. (2d) 59, thus:

"It is manifest that the statute itself does not prescribe any different degree of care on the part of the operator for different occasions and places or under different circumstances. It is made the duty of every person operating a motor vehicle to exercise the highest degree of care. Where? Everywhere on the highways. When? At all times, because no exceptions are authorized. The words (are) 'so as not to endanger the property of another or life or limb of any person,' " etc.

It is reasonable to assume that had it been the legislative purpose to except from the general rule of highest degree of care operators as hosts operating automobiles in gratuitous transportation of guests a provision in the laws would have been framed to accomplish that end. In the Threadgill case, supra, it is pointed out that any other than this broad interpretation and application of the statute would bring about incongruous results. It may be noted in passing that statutes of a few of the states, California, Georgia, Connecticut and

perhaps others, provide that of a host of a gratuitous guest is required the exercise of what may be summed up in the general expression slight care and that the majority rule is that of ordinary care in the states generally. [65 A. L. R. 952.] Our attention is directed to the case of Alley v. Wall (Mo. App.), 272 S. W. 998, 1002, as holding, as we find that it does hold, that the care due from a host to a guest is reasonable care. If by reasonable care was meant ordinary care—and those terms are sometimes, though inaccurately, if by way of definition, used interchangeably, but neither of which is a sufficient designation of the highest degree of care—that holding is disapproved

Certain criticisms are made of other instructions given and some of these criticisms are well founded, but inasmuch as the case will stand for retrial the counsel should, with the law of the case clarified, find no difficulty in reframing and correcting their instructions. One serious oversight may be noted, since it is not briefed by counsel and may therefore again occur: plaintiff's instructions omit to hypothesize any injuries sustained by her. And another: an instruction for defendants seems to range beyond the evidence.

As indicated by the foregoing observations the order of the court below in granting a new trial should be and is affirmed and the cause remanded. All concur.