Gladys FANN, Plaintiff-Respondent,

v.

Tivis C. FARMER, Raymond L. Berger and E. Paul Black, Defendants-Appellants.

No. 7441.

Springfield Court of Appeals.

Missouri.

March 26, 1956.

Wangelin & Friedewald, Poplar Bluff, for defendants-appellants.

Ted M. Henson, Poplar Bluff, for plaintiff-respondent.

STONE, Judge.

On Friday, March 13, 1953, plaintiff, 44 years of age, was riding on the right side of the rear seat of a 1952 Oldsmobile sedan driven by one Charles C. Adamson in a northerly direction on U. S. Highway 67, a two-lane concrete highway 18 feet in width, near Bonne Terre in St. Francois County, Missouri, when the Oldsmobile collided with an empty 1947 Dodge 2-ton truck driven by defendant Berger, an employee of defendants Farmer and Black, as the truck, east-bound on a private unpaved crossroad, attempted to cross Highway 67. In this jury-tried suit for personal injuries, defendants appeal from an adverse judgment of $3,000.

Adamson, then 23 years of age, was accompanied by his mother and a sister, riding in the front seat of the Oldsmobile, and by another sister, two nephews then 5 and 3 years of age, and plaintiff riding in the rear seat. The Adamson family were en route from Butler County, Missouri, to St. Louis to visit relatives. Plaintiff's status as a guest is not questioned. The weather was good and the pavement was dry. As Adamson came over the crest of a hill about 500 feet south of the point where the east-and-west private road crossed Highway 67, traveling at the speed of 55 to 60 miles per hour at which he had driven through "rolling country" from Poplar Bluff, he observed a sign, at or near the crest of the hill, reading "Caution—trucks crossing highway." When about even with this sign, Adamson first saw defendants' truck, then standing, headed east, with its front end approximately 5 feet west of the west edge of the pavement on Highway 67. Adamson then removed his foot from the accelerator but took no other action until, when his Oldsmobile was 200 to 300 feet distant, defendants' truck started to move forward. Then, Adamson "sounded my horn and started applying my brakes," but the truck "kept coming" resulting in a collision between the left front portion of the north-bound Oldsmobile and the right front

portion of the east-bound truck at a point which, although not precisely located, was near the east side of the pavement on Highway 67.

Sergeant Maxey, the investigating officer, found "fragmentary skid marks" made by the Adamson automobile, beginning about 95 feet south of the point of impact and continuing "more or less in a straight line for some distance" to the north of the point of impact before they crossed to the west side of Highway 67 and terminated where the Oldsmobile came to a stop, headed in a northwesterly direction and "nosed into" a bank on the west side of the highway about 115 feet north of the place of collision. Some unidentified part dragged on the ground after the left front portion of the Adamson automobile was "very badly damaged" at the point of impact, and Maxey without objection stated that, after the collision, Adamson had no control over his vehicle. Following the wreck, defendants' empty truck, weighing about 8,000 pounds, came to rest on its right side, headed back toward the west, at a point 15 to 18 feet north of the place of collision. Likewise without objection, Maxey testified that, "if everything is normal," the estimated "stopping distance" of "a car going sixty miles an hour" is 251 feet, although it is by no means clear that this opinion was based on all of the conditions existing at the time and place of the accident under consideration, including the important fact that the Oldsmobile was traveling downgrade as it approached the point of collision.

Defendant Berger, the truck driver, said that he stopped with the front end of his east-bound truck about 5 feet from the west edge of the pavement on Highway 67; that he looked to the south (the direction from which Adamson was approaching) and saw nothing; that, thereafter observing an automobile approaching from the north, he waited for that vehicle to pass, "looked again and went on across"; and, that he never saw the Adamson automobile prior to the crash. Berger frankly conceded that he told the investigating officer that "I really don't know what hap-pened—I waited for a south-bound car to go by, then I started across and it happened."

Defendants' primary insistence is that their motion for a directed verdict at the close of all of the evidence should have been sustained because plaintiff was guilty of contributory negligence as a matter of law. Defendants' argument runs along the line that plaintiff, sitting on the right side of the Adamson automobile and looking to her right, "looked directly at * * * or directly past" the "caution" sign on the crest of the hill about 500 feet south of the point of collision; that, if plaintiff then had warned Adamson, "he was a sufficient distance from the scene to have reduced his speed and brought his automobile under control" so as to have avoided the accident; but that, admittedly having said nothing to her host, plaintiff "allowed herself to be driven carelessly to her injury."

It is true that " '(w)hen dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery.' " Ezell v. Kansas City, Mo., 260 S.W.2d 248, 250(3); Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 915(5); Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, 24(10). However, a guest in an automobile is required to exercise only ordinary care for his own safety [State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S.W.2d 233, 238(9); Davis v. F. M. Stamper Co., 347 Mo. 761, 148 S.W.2d 765, 768(3)]; and, while the law does not permit a guest to intrust his safety absolutely to the driver, regardless of impending danger or apparent lack of ordinary caution on the driver's part, it does not require the guest to exercise the same vigilance as the driver nor impose upon the guest the same obligation to look for danger. Smith v. St. Louis-San Francisco Ry. Co., 321 Mo. 105, 9 S.W.2d 939, 946(6); Setzer v. Ulrich,

Mo.App., 90 S.W.2d 154, 157(9); Hill v. Missouri Pac. R. Co., Mo.App., 40 S.W.2d 741, 743. Our courts have said repeatedly that "it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so";[1] and, similarly we read that "(i)n the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle." Toburen v. Carter, Mo., 273 S.W.2d 161, 164(2); Ketcham v. Thomas, Mo., 283 S.W.2d 642, 645(2). See also Flint v. Chicago, B. & Q. R. Co., 357 Mo. 215, 207 S.W.2d 474, 479(5).

Since "(n)egligence depends upon the surrounding circumstances, as well as the particular conduct involved, because an act or omission which would clearly be negligence in some circumstances might not be so in other situations" [Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, 13(2)], all of the authorities recognize that every case must rest upon its own particular facts [Knox v. Weathers, supra, 257 S.W.2d loc. cit. 916(6)]; and, in determining whether a guest has been guilty of contributory negligence, his "situation and duty must be considered as of the time the danger presented itself" [Kaley v. Huntley, supra, 63 S.W.2d loc. cit. 24(11)] and his conduct with respect to the exercise of care in operation of the vehicle must be judged primarily with reference to the driver's conduct and the guest's ability to control the driver. Boland v. St. Louis-San Francisco Ry. Co., Mo., 284 S.W. 141, 144 (1).

In the instant case plaintiff said that, as the Adamson Oldsmobile came over the brow of the hill and passed the "caution" sign some 500 feet south of the point of accident, she was paying no attention to the driving and did not observe the sign. She "was just watching the scenery—it was my first trip up there." But, there is not a word of testimony in the record before us that anything said or done by Adamson on the trip from Poplar Bluff had indicated either that he was not exercising, or that it should have been anticipated that he would not exercise, the highest degree of care in the operation of his automobile; and thus, there having been no evidence of a visible lack of caution on Adamson's part, plaintiff had no duty to maintain a lookout for roadside signs and potentially dangerous situations. Ketcham v. Thomas, supra, 284 S.W.2d loc. cit. 647 (5).

Plaintiff did not see the "caution" sign or defendants' truck; but, if she had, it is not apparent what she could have done to have averted the accident. Adamson admittedly saw the "caution" sign, first observed defendants' truck as he passed that sign, and thereafter watched the truck continuously to the time of accident; and, with defendants' truck stopped on the private crossroad west of Highway 67 and the two drivers in plain view of each other, there was no indication that a collision might occur until the truck started moving forward when the two vehicles were no more than 200 to 300 feet apart. Adamson said that, upon this first suggestion of impending disaster, he promptly "sounded my horn and started applying my brakes," and the ensuing collision was what has been regarded as "an almost instantaneous happening." Kaley v. Huntley, supra, 63 S.W.2d loc. cit. 24. Under such circumstances, plaintiff,

1. Boland v. St. Louis-San Francisco Ry. Co., Mo., 284 S.W. 141, 144(5); Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 964(3); Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 877 (8); Smith v. St. Louis-San Francisco Ry. Co., 321 Mo. 105, 9 S.W.2d 939, 946; Brown v. Alton R. Co., 236 Mo.App. 26, 151 S.W.2d 727, 739; Parsons v. Himmelsbach, Mo.App., 68 S.W.2d 841, 845, certiorari quashed State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 85 S.W.2d 420; Hill v. Missouri Pac. Ry. Co., Mo. App., 40 S.W.2d 741, 743; Rosenstein v. Lewis Automobile Co., Mo.App., 34 S. W.2d 1023, 1027(6).

a guest in the rear seat with more or less obstructed vision ahead, certainly could not be charged with contributory negligence as a matter of law, for that may be found "only when reasonable minds could not differ as to plaintiff's negligence." Dickerson v. Terminal Railroad Ass'n of St. Louis, Mo., 284 S.W.2d 568, 573(12).

Furthermore, "(c)ontributory negligence, to be a defense, must be negligence contributing to plaintiff's injuries" [Triplett v. Beeler, Mo., 268 S.W.2d 814, 818(6)], i. e., such negligence "as to enter into and form the direct, producing, and efficient cause of the casualty, * * * absent which the casualty would not have happened";[2] and, since it is obvious that, by warning Adamson of the sign and defendants' truck, plaintiff would have told Adamson of nothing which was not already known to him, there could have been no causal connection between plaintiff's alleged negligence and the collision.[3] We have no doubt but that defendants' motion for a directed verdict at the close of all of the evidence properly was overruled.

In view of what we have heretofore said, which is equally pertinent in this connection, it is apparent that defendants' further complaint that the trial court erred in refusing to give instruction 6, relating to plaintiff's alleged contributory negligence in failing to see the "caution" sign and warn Adamson, is without merit. Ketcham v. Thomas, supra, 283 S.W.2d loc. cit. 647 (4); Cheatham v. Chartrau, 237 Mo.App. 793, 176 S.W.2d 865, 869(7).

Defendants' final complaint is that the verdict for $3,000 was grossly excessive. Plaintiff's injuries were a "Y-shaped" laceration, closed with three sutures, which was about one-half inch in length and one-quarter inch above her left eyebrow with the lower portion of the laceration extending into the eyebrow; "contusions and substataneous (subcutaneous) hemorrhages * * * referred to frequently as a heavy bruse" around both eyes and on her face, forehead and shoulders; "scratches and abrasions" on both legs and knees; a small cut on the inside of her right ankle which required no suture; and, some swelling in that ankle. Plaintiff returned to her home at Rombauer, Butler County, Missouri, by automobile on the day of accident. Her testimony was that she "was up and down for about * * * two to four weeks," that "both eyes remained black better than a month," that she "had these bruises * * about three weeks to a month," and that she had pain in her shoulders and neck "two to three weeks, something like that." On March 18, 1953, which was five days after the accident, plaintiff went to the office of Dr. J. L. Harwell in Poplar Bluff for removal of the sutures from the laceration above her left eyebrow. Plaintiff said that was the only medical attention she had after the date of accident, but Dr. Harwell thought that he had seen her on March 21, 1953, "for a redressing." In any event, the doctor gave her no medication but simply told her "to take it easy" for three or four weeks. Plaintiff paid $3 to Dr. Harwell; but, during the trial, her counsel stated that "we are not suing for any medical bill" nor "for any loss of wages or time."

Plaintiff's only complaints at the trial on January 26, 1955, were that "I have a sharp pain once in a while over this (presumably the left) eye and it goes back to the back of my head"; that, as stated on direct examination, when "standing around" on her feet, "they will swell up occasionally, *the ankles*" and, as stated on cross-examination, "just occasionally *my*

2. Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S.W. 1144, 1145(2); Meredith v. Terminal R. R. Ass'n of St. Louis, Mo. App., 257 S.W.2d 221, 226(13). Cf. Hatton v. Sidman, Mo.App., 169 S.W.2d 91, 98.

3. Buehler v. Festus Mercantile Co., supra, 119 S.W.2d loc. cit. 965(5); Cheatham v. Chartrau, 237 Mo.App. 793, 176 S.W.2d 865, 869(4); Chervek v. St. Louis Public Service Co., Mo.App., 173 S.W.2d 599, 603(6); Rosenstein v. Lewis Automobile Co., supra, 34 S.W.2d loc. cit. 1026(4). Consult also Ketcham v. Thomas, Mo., 283 S.W.2d 642, 645.

*feet* swell up"; and, that there is a scar over her left eyebrow. However, there was no medical testimony suggesting the permanency of any injury, other than the scar, or indicating any causal connection between the accident and the "sharp pain once in a while" over the eye or the occasional swelling of the feet or ankles; and, under the well-recognized rule that, although it need not be demonstrated with absolute certainty, the permanency of an injury may not be established on the basis of conjecture, likelihood or probability,[4] it is clear that plaintiff showed no permanent injury other than the scar over her left eyebrow. This scar was visible to Dr. Harwell as he sat on the witness stand about ten feet from plaintiff. However, the "discoloration on this scar" was described by the doctor as "very very slight—from here you wouldn't see the discoloration"; and, although when asked by plaintiff's counsel on direct examination whether the scar is "a disfigurement," Dr. Harwell agreed that "it is considered such in a female, yes," he stated on cross-examination that "I would classify it * * * not as a cosmetic defect" and, on redirect examination, that "it could be covered with makeup."

Although the amount of damages is primarily for the jury [Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, 681(14)], an appellate court properly may determine, as a matter of law, the maximum amount which the evidence would support. Sanders v. Illinois Cent. R. Co., 364 Mo. 1010, 270 S.W. 2d 731, 737(5), 738(8). Obviously, such question is not susceptible of determination by precise formula or with mathematical nicety, and each case must be ruled on its own particular facts. Pitt v. Kansas City Public Service Co., Mo., 272 S.W.2d 193, 197(7). "Consideration is given to the nature and extent of the injuries and disabilities, diminished earning capacity, changing economic factors and the compensation awarded and approved in cases of similar or fairly comparable injuries. The nature, extent and permanency of the injuries are the paramount factors and the ultimate test of excessiveness or of the inadequacy of award is what will fairly and reasonably compensate the plaintiff for her injuries." Rodefeld v. St. Louis Public Service Co., Mo., 275 S.W.2d 256, 262(11, 12).

As is usually true, we find no case in which the reported injuries were exactly the same as in the case at bar; but, viewing the evidence before us in the light most favorable to plaintiff, as it is our duty to do [Horrell v. St. Louis Public Service Co., Mo., 277 S.W.2d 612, 618(12); Scneder v. Wabash Railroad Co., Mo., 272 S.W.2d 198, 208(15)], and having due regard for the numerous important considerations relating to the question [Sanders v. Illinois Cent. Railroad Co., supra, 270 S.W.2d loc. cit. 740(12, 13)], examination of the cases [5] closest on the facts (although in all of them the injuries manifestly were more severe than in the instant case) impels the conclusion that, even in this period of easy money and continuing inflation, the verdict is excessive. If plaintiff will, within fifteen days from the date hereof, enter a remittitur in this court in the sum of $1,200, the judgment will be affirmed for $1,800 as of the date of its entry in the trial court; otherwise, the judgment will be reversed and the cause remanded for a new trial. It is so ordered.

McDOWELL, P. J., and RUARK, J., concur.

4. State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S.W. 2d 428, 430(2); Weiner v. St. Louis Public Service Co., Mo., 87 S.W.2d 191, 192(1); Hoffman v. Illinois Terminal R. Co., Mo.App., 274 S.W.2d 591, 593–594 (2); Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 673(13).

5. Morris v. Alexander, Mo.App., 275 S.W. 2d 373, 380(14); Roberts v. Carter, Mo. App., 234 S.W.2d 324, 328–329(6, 7); Kulengowski v. Withington, Mo.App., 222 S.W.2d 579, 585–586; Brooks v. McCray, Mo.App., 145 S.W.2d 985, 991–992(7, 8); Taylor v. Terminal R. Ass'n of St. Louis, Mo.App., 112 S.W.2d 944, 949–950(6, 7); Ulmer v. Farnham, Mo.App., 28 S.W.2d 113, 116–117(10).