Carol BROOKS, a Minor, by Rita O'LEAR, her next friend, Respondent,

v.

Ernest MOCK, Appellant.

No. 47145.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Motion for Rehearing or to Transfer to Court en banc Denied Jan. 11, 1960.

Heneghan, Roberts & Cole and George E. Heneghan, St. Louis, for defendant-appellant.

Paul J. Kaveney, St. Louis, for plaintiff-respondent.

HOLMAN, Commissioner.

Action to recover damages for personal injuries sustained by plaintiff in an intersectional collision between the car in which she was riding (driven by her husband)

and one driven by defendant. Plaintiff obtained a verdict for $17,500 but the trial court ordered a remittitur of $2,500 and upon compliance therewith a judgment was entered for $15,000. Defendant has appealed.

Plaintiff and her husband moved to St. Louis, Missouri, after his release from the Navy in November 1956 and established residence at 1634 S. 18th Street. The collision in question occurred at about 6:45 a. m. on December 31, 1956, in the southwest quadrant of the Lafayette Avenue and 14th Street intersection. There was evidence to indicate that Lafayette Avenue was about 50 feet wide and that 14th Street was also about 50 feet wide north of its intersection with Lafayette but was probably not over 25 feet wide south of that intersection. There were no traffic controls in operation for traffic on Lafayette at the time of the collision but there was a stop sign for traffic traveling south on 14th. Plaintiff was seated on the right side of the front seat in the 1951 4-door Chevrolet sedan being driven by her husband. The rear seat was occupied by Edward Joshu and Mrs. Sue Burns and the car was proceeding south on 14th Street.

Just prior to the collision defendant, Ernest Mock, was on his way to work and was driving east on Lafayette Avenue in a Plymouth car. Plaintiff's husband testified that as he drove south to the intersection in question the lights of his car were on; that it was just becoming light, "it wasn't daylight but it wasn't dark"; that he stopped at Lafayette and looked both directions; that when he looked west he could see cars perhaps a block away; that he proceeded into the intersection and when he was about the center of Lafayette looked to his right again and defendant's car was "right upon me"; that his car was struck at the right front door; that the force of the collision diverted the course of his car so that it ran into a lamppost at the southeast corner of the intersection; that the collision with the lamppost caused him to be "knocked out"; that he

regained consciousness at the City Hospital, which was located very close to that intersection. This witness denied that he had drunk any intoxicating liquors during the night preceding the collision, although defendant read in evidence a portion of the hospital report containing the statement, "Drinking. Not drunk."

Plaintiff testified that her husband stopped the car at the stop sign before entering Lafayette; that as the car proceeded across Lafayette (with the car lights turned on) she did not look to the right but was looking straight ahead; that when their car was three-fourths of the way across Lafayette "we got hit"; that she did not see or hear the defendant's car and was "knocked out" by the collision and didn't remember anything more until sometime after arriving at the hospital. Plaintiff also stated that she had no knowledge of her husband having drunk any intoxicating liquor during the night before the collision. Plaintiff's injuries will be hereinafter stated in connection with our consideration of the question of excessiveness of the judgment.

According to Edward Joshu, it was just beginning to get light at the time of the occurrence in question, although he testified that the Brooks car had its lights turned on. He stated that Mr. Brooks stopped before entering Lafayette and that he, Joshu, looked to the west but saw no car approaching; that as they got past the center of Lafayette there was a violent collision which caused the Brooks car to run into the lamppost on the southeast corner of the intersection; that he saw defendant's car when it was five feet away and didn't notice any reduction of its speed or see it swerve prior to the time it struck the other car. None of the occupants of the car appeared to know the whereabouts of Mrs. Burns at trial time and she was not called as a witness.

There were two men standing near the southwest corner of the intersection who witnessed the collision and whose testi-

mony tended to corroborate the testimony of the occupants of the car as to the manner in which the collision occurred. W. R. McGhee stated that he had seen the Brooks car with its lights burning when it stopped at the stop sign and that it then proceeded across the intersection; that he saw defendant's car when it was 40 feet west of 14th Street going from 45 to 50 m. p. h.; that the Chevrolet was the first to enter the intersection and when it arrived at a point past the center of Lafayette it was struck by defendant's Plymouth; that defendant did not change his speed or swerve or sound a horn prior to the collision. Substantially the same testimony was given by Mr. McGhee's companion, Arthur Vogelpohl, except that he did not definitely estimate the speed at which defendant was driving.

Defendant testified that he approached 14th Street at a speed of 25 m. p. h. and was driving in the lane next to the center because he intended to turn left at 12th Street; that his car lights were on; that when he was 30 feet from 14th Street he saw a blur to his left in the intersection but could not recognize what it was; that when he was 20 feet from the point of the collision he recognized the blur as an automobile traveling without lights; that he did not apply his brakes when he first saw the blur but when he recognized it was an automobile he endeavored to apply his brakes but the crash occurred before they took effect; that after the collision he got out of the car and walked over to the Brooks car and mentioned to a bystander that it had no lights on and the bystander then reached into the Brooks car and turned on its lights. He stated that he helped take Mr. Brooks out of the car and at that time could smell alcohol on his breath.

In connection with some of the points briefed, defendant seems to take the view that the activities of plaintiff and her husband on the night preceding the occurrence are material. We will therefore briefly detail those activities. On the evening of the 30th, at about 8 p. m., plaintiff and her husband took their infant daughter to the home of his aunt on South 8th Street and then went to the Fox Theater. They left the theater about 11 o'clock and went to a nearby restaurant where they met a friend who asked them to go to a dance; they accepted his invitation and at 1:30 or 2 a. m. they left the dance with Joshu and Mrs. Burns; they obtained refreshments at a restaurant where they met with other friends, a Mr. and Mrs. Cray who lived in East St. Louis; at that point they decided to take the Crays to their home in East St. Louis and did so. Upon arrival in East St. Louis they visited for a time in the Cray home. On their way back they stopped at a restaurant in East St. Louis where they had food and coffee. When they arrived in St. Louis it was intended that all of the party stop at the Brooks home for a time before Joshu and Mrs. Burns were taken to their respective homes, but when they neared 14th Street plaintiff suggested to her husband that they first stop at the home of his aunt and get their daughter, and it may be inferred that this was the reason Mr. Brooks turned and started south on 14th Street shortly prior to the collision.

The first point briefed is that the court erred in overruling defendant's motion for a directed verdict because (1) plaintiff was guilty of contributory negligence as a matter of law, and (2) plaintiff and her husband were on a joint venture and his negligence was, as a matter of law, her negligence.

At the outset it should be made clear that defendant is not complaining of a refusal of the trial court to submit the issue as to plaintiff's contributory negligence to the jury as defendant did not offer any instruction submitting that issue. The contention is that plaintiff was, as a matter of law, guilty of contributory negligence in failing to look for traffic on Lafayette and thus to have seen defendant's car approaching and to have warned

her husband thereof. " 'In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle.' Toburen v. Carter, .supra [Mo., 273 S.W.2d 161, 164]; Ketcham v. Thomas, [Mo., 283 S.W.2d 642] supra; Fann v. Farmer, supra [Mo.App., 289 S.W.2d 144]. The duty of a guest, in the exercise of ordinary care, is to warn the driver of known imminence of danger, and, when the driver has. been or is exercising a visible lack of caution, to take such action as an ordinarily or reasonably prudent and careful person would take under the same or similar circumstances, which could, among other things, include the maintenance of a lookout for dangerous situations." Happy v. Blanton, Mo.Sup., 303 S.W.2d 633, 638. While it is true that Mr. Brooks had spent the night at various places of entertainment there is nothing in the evidence (when viewed most favorably to plaintiff) to indicate that he was not exercising the highest degree of care in the operation of his automobile. In that situation we think it apparent that plaintiff may not be said to have been guilty of contributory negligence as a matter of law in failing to keep a lookout to the right as the car entered Lafayette Avenue. We have read all of the cases cited by defendant upon that point and none of them support his contention under the factual situation here involved.

■ As another ground for his contention that the motion for a directed verdict should have been sustained defendant seems to assume that Mr. Brooks was, as a matter of law, guilty of negligence which contributed to cause the collision and contends that he and plaintiff were on a joint venture and hence the negligence of her husband is imputed to plaintiff and would bar her recovery. That contention is without merit. At the outset we observe that defendant did not plead that plaintiff and her husband were engaged in a joint venture, no such contention was specified in his motion for a directed verdict, and no instruction was offered by defendant submitting any theory of joint venture or imputed negligence. However, even if we assume that the point is properly before us, and if we further assume that there was a joint venture (which we do not decide), we are nevertheless of the opinion that the court properly overruled the motion for a directed verdict. This for the reason that the favorable evidence is not sufficient to warrant a ruling that plaintiff's husband was, as a matter of law, guilty of negligence in the manner in which he approached and proceeded across the instant intersection. We have heretofore stated the evidence and there is no reason to restate it in this connection. We accordingly rule this point against defendant.

■ In his answer defendant pleaded that plaintiff's injuries, if any, "were sustained as a direct and proximate result of her own carelessness and negligence directly contributing thereto." As heretofore stated he did not offer any instructions which submitted that issue to the jury. Plaintiff's case was submitted to the jury by her verdict-directing instructions 1 and 2. The next point, briefed by defendant is the contention that both of said instructions were prejudicially erroneous because they failed to negative plaintiff's contributory negligence. In disposing of that point we will assume (but do not decide) that the evidence was sufficient to support a submission to the jury of the issue of plaintiff's contributory negligence. Until recently it has been the rule in this state that "a verdict-directing instruction given in behalf of plaintiff which omits therefrom a finding upon a pleaded issue of plaintiff's contributory negligence, supported by substantial evidence, is prejudicially erroneous unless such error is cured by the defendant's submitting that issue in its own behalf." Bowyer v. Te-Co., Inc., Mo.Sup., 310 S.W.2d 892, 897. However, in the case of Shepard v. Harris, Mo., 329 S.W.2d 1, 7, (opinion adopted by court en banc November 12, 1959), we re-examined the quoted rule and concluded that it was

illogical and no reason existed for continuing to follow it. The correct rule was formulated in that opinion as follows: "We are of the opinion and therefore hold that when a defendant fails to submit the affirmative defense of contributory negligence he has thereby abandoned that defense and it no longer remains an issue in the case for any purpose, and, consequently, a plaintiff's verdict-directing instruction which ignores such abandoned issue of contributory negligence is not erroneous." Upon authority of Shepard we rule the instant contention against defendant.

■ Instruction No. 1 directed a verdict for plaintiff upon a finding "that the automobile in which plaintiff was a passenger entered said intersection prior to the time defendant's automobile entered said intersection and that the automobile in which plaintiff was a passenger was already within the intersection when defendant's automobile arrived thereat; and if you further find and believe from the evidence that after the automobile in which plaintiff was a passenger was in said intersection, the defendant, in the exercise of the highest degree of care, could have yielded the right of way through such intersection, that is the right to proceed through such intersection, to the automobile in which plaintiff was a passenger; and that he failed so to do * * *." That submission was predicated upon an ordinance of the City of St. Louis which provided, in part, as follows: "Reduce speed at intersections and yield the right of way to any vehicle already within the intersection * * *." The next point briefed by defendant is that the giving of Instruction No. 1 constituted reversible error because the ordinance upon which it was based was in conflict with the state statute upon the same subject matter. Section 304.021, subd. 1 (see P.P. 16 V.A.M.S.) provides as follows: "The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway, provided however, there is no form of traffic control

at such intersection." Defendant says that the proviso in the statute creates a conflict between the state law and the ordinance. We do not agree. This for the reason that if the stop sign on 14th Street is considered a "form of traffic control" within the meaning of that phrase as used in the proviso, then Section 304.021, subd. 1, supra, would have no application to the instant intersection and the city would be at liberty to regulate traffic at said intersection by ordinance, and, on the other hand, if said sign is not considered a "form of traffic control" as such phrase is used in the proviso, then the statutory provision and the ordinance are in harmony. In either event there is no conflict.

■ Instruction No. 2 reads as follows: "The court instructs the jury that if you find and believe from the evidence that on the occasion described in evidence, the plaintiff was a passenger in an automobile being driven in a southwardly direction on Fourteenth Street in the City of St. Louis, Missouri; and if you further find and believe from the evidence that defendant was driving and operating his automobile in an eastwardly direction on Lafayette Avenue; and if you further find and believe from the evidence that as the defendant was so driving his automobile and while he was approaching and entering the intersection of Lafayette Avenue with said Fourteenth Street, the defendant was driving his automobile at a rate of speed in excess of forty miles per hour and that such was a high and excessive rate of speed under the circumstances shown in evidence, and that in so driving and operating, the defendant was negligent, as that term is defined in the other instructions here given you; and if you further find and believe from the evidence that such negligence, if any, of the defendant caused or contributed to cause the collision of the two vehicles mentioned in evidence, and caused or contributed to cause the plaintiff to be injured, if you find that she was injured, then your verdict should be in favor of the plaintiff and against the defendant." De-

fendant contends that said instruction was reversibly erroneous for a number of reasons. It is first said that it should have contained a finding that there was apparent danger of collision unless defendant reduced his speed. He relies upon Stakelback v. Neff, Mo.App., 13 S.W.2d 575, 577, where the court stated that "It cannot be said that the law imposes the duty upon the driver of an automobile, upon approaching and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur." The doctrine of the Stakelback case has been applied in many cases wherein the negligence submitted was failure to stop, slacken, or swerve. However, no case has been cited wherein that rule has been held applicable to an instruction in which the only negligence submitted is the operation of an automobile at a high and excessive rate of speed. We have concluded that the Stakelback doctrine has no application to a submission such as the one hypothesized in Instruction No. 2 and we accordingly rule this point against defendant.

■ The next point briefed is that Instruction No. 2 was erroneous because it hypothesized a rate of speed in excess of 40 m. p. h. at the time defendant was "approaching and entering the intersection" instead of specifying his speed at the time of the collision. In that connection we note that all of the witnesses testifying in regard to the speed of defendant's car (including defendant himself) agreed that there was no reduction in the speed of the car between the time it entered the intersection and the occurrence of the collision. In the light of that evidence it should be apparent that no prejudicial error occurred in fixing the finding regarding excessive speed as the time the car entered the intersection as any rate of speed found by the

jury at that point would necessarily have been the same speed as that which existed at collision time.

■ Upon the issue of excessive speed plaintiff did not rely upon the violation of a rate of speed as fixed by an ordinance or statute but upon common law negligence in that regard. That course is authorized by the cases. See Glowacki v. Holste, Mo.Sup., 295 S.W.2d 135[3] and cases cited therein. But defendant complains that the submission in Instruction No. 2 was fatally defective for lack of a proper factual hypothesis and gave the jury a roving commission to find for plaintiff upon the speed issue. He cites Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541. At the outset it should be noted that the submission here was much different from that in Yates. In Yates the submission was merely "at an excessive and dangerous rate of speed under the circumstances and in so doing was negligent." 217 S.W.2d 544. The instant submission was, "while he was approaching and entering the intersection of Lafayette Avenue with said Fourteenth Street, the defendant was driving his automobile at a rate of speed in excess of forty miles per hour and that such was a high and excessive rate of speed under the circumstances shown in evidence, and that in so driving and operating, the defendant was negligent." Moreover, it should be noted that the ruling in Yates (holding the quoted submission erroneous for failure to hypothesize sufficient facts) has been explained and restricted in the cases of Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, and Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496.

In the case at bar there was no dispute about the physical surroundings. In addition to facts already stated we should perhaps mention that there was evidence to indicate that the city hospital was located in the block west of the intersection in question and that there was a hospital speed zone in that block. Also, there was testimony to the effect that defendant was

driving his car at a rate of speed in excess of the legal speed limit, which limit was not made clear but was indicated to be less than the rate specified in the instruction. Also, it is undisputed that defendant failed to reduce his speed at the instant intersection as would seem to have been required by the ordinance which was admitted in evidence in connection with another submission.

Defendant does not point out any additional facts which he says should have been hypothesized in the instruction. It is apparent to us that the jury was not given a "roving commission" by the submission because it was precluded from finding any speed as negligent unless it was in excess of 40 m. p. h. That would exclude a finding that a speed of 25 m. p. h. (as defendant testified) was negligent. The issue pertaining to speed was relatively simple. Under the instruction, if the jury found that defendant was driving 25 m. p. h. (as he testified) it would find for defendant. If it believed that defendant's car was traveling 45 to 50 m. p. h. (in excess of 40 m. p. h.) in accordance with the testimony of witness McGhee, and (under the circumstances shown in evidence) that such speed was negligence, it would find for plaintiff. It is also significant that the instruction hypothesized that the speed specified was being maintained while the car was approaching and entering the intersection.

We have concluded that under the facts and circumstances of this case the jury could reasonably have found that a speed in excess of 40 m. p. h. was "high and excessive" and therefore negligent under any factual situation disclosed by the evidence, and hence the jury was not misled concerning its duty by the failure of the instruction to contain a more particularized hypothesization of the facts. We accordingly rule that the instruction in question was not prejudicially erroneous because of a failure to more fully hypothesize the evidentiary facts.

Instruction No. 1 required a finding that the negligence, if any, of defendant "caused or contributed to cause the collision." Instruction No. 2 contained similar language. Defendant contends that both instructions were erroneous because they did not use the word "directly" or some similar word to modify the word "caused." While it is the better practice to use the word "directly" or "proximately" in the phrase which requires a finding of causal connection between the negligence and injury, we have frequently ruled that the omission of such a word does not constitute reversible error. Anderson v. Union Terminal R. Co., 161 Mo. 411, 61 S.W. 874; White v. United Rys. Co. of St. Louis, 250 Mo. 476, 157 S.W. 593; Grosvener v. New York Cent. R. Co., 343 Mo. 611, 123 S.W. 2d 173; Wilson v. Toliver, Mo.Sup., 305 S. W.2d 423. The facts and circumstances hypothesized in the instructions under consideration would have compelled a finding of direct or proximate cause. There was nothing incorporated therein which would have reasonably permitted a finding that the negligence was merely a remote cause of the collision and injury. We cannot conceive of the jury being misled by the omission under consideration and we accordingly rule that no prejudicial error occurred in that respect. Giambelluca v. Missouri Pacific R. Co., Mo.Sup., 320 S.W. 2d 457[10].

Defendant next contends that the court erred in giving Instruction No. 4 which reads as follows: "The court instructs the jury that if you find and believe from the evidence that this defendant was negligent under Instructions No. 1 and 2 submitted to you, and that such negligence of the defendant, if any you so find, in any degree concurred and combined with the negligence of the driver of the car in which plaintiff was riding, to cause plaintiff to sustain injury, then your verdict should be in favor of the plaintiff and against the defendant." The specific error complained of is the use of the words "in any degree."

The use of phrases of that nature has frequently been criticized and in some cases held to be reversible error. See Waldrip v. American Buslines, Inc., Mo.Sup., 327 S.W.2d 211; Danner v. Weinreich, Mo. Sup., 323 S.W.2d 746; Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S.W. 2d 103, and Kunz v. Munzlinger, Mo.Sup., 242 S.W.2d 536. However, in the present instruction, the jury is specifically referred to Instructions 1 and 2, both of which require a finding of causative negligence on the part of defendant as a prerequisite to a plaintiff's verdict. Under the circumstances of this case we do not think that it could reasonably be said that the jury would have been confused by the use of the phrase complained of and we accordingly rule that the instruction under consideration was not prejudicially erroneous. Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S.W.2d 873.

■ Complaint is also made concerning the measure of damage instruction. That instruction, after reciting that the jury (in the event of a finding for plaintiff) return a verdict in such sum as would "fully, fairly and reasonably compensate her for such injuries," also permitted consideration, "in assessing such damages," of past and future pain and suffering and also "permanent injuries." Defendant contends that permitting a consideration of past and future pain, and also a separate reference to permanent injuries, authorized a recovery of double damages in that pain would also be encompassed in the item "permanent injuries." Upon the authority of Moss v. Mindlin's, Inc., Mo.Sup., 301 S.W.2d 761, we rule that the instruction was not prejudicially erroneous in that regard. Defendant also contends that the instruction is erroneous because it did not contain the phrase "under the evidence and instructions of the court" in referring to a finding for plaintiff as a prerequisite to the assessment of damages. It is said that by the omission of that phrase the jury was permitted to find for plaintiff without regard to the evidence or the instructions of the court.

The contention is without merit. We are of the opinion that upon a consideration of all of the instructions together the jury would have fully understood its duties in that regard. The instruction is also criticized because it uses the phrase "occurrence mentioned in evidence" in referring to the collision rather than the suggested words "casualty" or "negligence." That point is obviously without merit.

■ The next point briefed relates to the alleged error of the court in sending a verbal instruction to the jury through the deputy sheriff. That contention of defendant is the result of the occurrence shown in the transcript as follows:

"The Court: Let the record show that after the jury had retired, they sent word to the court by the deputy sheriff that they would like to know whether in the event nine jurors agreed upon the issue of liability, the other three jurors would have anything to say about the amount of the verdict. * * *

"Mr. Heneghan: * * * I object and except to the deputy sheriff taking instructions to the jurors because we don't know how she carries out the statement of the court and what she said to them. I think it is dangerous practice * * *.

"The Court: Suppose I send for the jury and have them brought down and ask them what their question is and then I think we will tell them—

"Mr. Heneghan: If you do have them brought out * * * I think they should be instructed to disregard any instructions they received from the deputy sheriff.

"The Court: Why, of course, we will do that."

(Proceedings continued in open court within the hearing and presence of the jury, as follows):

"The Court: Gentlemen of the jury: The deputy sheriff reported that you had a question you wished to ask the court and she told us what she understood it to be and we sent you an answer. I want you to disregard all of that. Disregard what you told her and disregard what she told you. If you have a question you wish to propound now, please propound it now, but don't indicate how you stand in any way. Have you a question that you wish to propound?

"Juror No. Three: Your Honor, the subject came up, if so many men being one way and a few the opposite, so therefore, is what we wanted to know, the men that were for the opposite, would they be allowed to have a voice on the main subject?

"The Court: Alright. All I can say to you is, gentlemen, that I am unable to give you any further instructions. The instructions * * * are given you in writing. The court is not permitted to give oral instructions to the jury, and I cannot answer your question except to refer you to the instructions from which I should think you would derive light. You care to say anything, either of you gentlemen?

"Mr. Heneghan: No, your honor.

"Mr. Kaveney: No.

"Mr. Heneghan: I assume that there has been no verdict reached?

"The Court: No, no verdict.

"Mr. Heneghan: As long as there hasn't been any verdict reached and the court rescinded what the sheriff might have told them—"

It would seem obvious that the action of the court in sending the jury a verbal answer to its inquiry through the deputy sheriff was error. However, we have the view that the error was cured by the prompt action of the court in having the jury brought into open court (before it had reached a verdict) and, in accordance with the suggestion of defendant's counsel, unequivocally instructing the jury to disregard both the question and the answer, and, in further emphasizing that direction by explaining that the court could not even give the jury an oral explanation or instruction in open court. Moreover, it would appear that defendant's counsel was substantially satisfied, at the time, by the action taken by the court. We are convinced that the incident under consideration did not constitute reversible error.

Defendant next contends that the court erred in admitting in evidence the city ordinance heretofore referred to because the ordinance is in conflict with the state statute upon the same subject. The same argument was made in connection with defendant's contention that the court erred in giving Instruction No. 1 which was based upon that ordinance. What we said in that connection will suffice to rule the instant contention adversely to defendant.

In his reply brief defendant makes the assertion that the testimony of plaintiff's witnesses McGhee and Vogelpohl should be disregarded because "unbelievable, self-destructive, and nonsensical." That contention was not set forth in the main brief under "points relied on" and we are asked to invoke S.C.Rule 3.27, 42 V.A.M.S., in order to consider it. We will not extend this already lengthy opinion by a discussion of that point. It is sufficient to say that we see no occasion for invoking said rule in this instance. We are of the opinion that no "manifest injustice" will result from our failure to do so.

■ Shortly before noon on the first day of the trial, while plaintiff was testifying about her physical condition as a result of the collision, she began to cry. The court promptly excused the jury for the noon recess and there was no recurrence of that type of incident during the remainder of the trial. The defendant now contends that the court erred in overruling his motion for a mistrial which was based upon

the so-called "crying exhibition" of plaintiff. The transcript indicates that the trial judge was of the opinion that defendant was not prejudiced by the incident. It is well established that the determination of the prejudicial effect of that type of demonstration is a matter within the sound discretion of the trial court. Clark v. McKeone, Mo.Sup., 234 S.W.2d 574. We see nothing to indicate that the trial court abused its discretion in this instance.

■ The final contention of defendant is that the judgment for $15,000, after entry of remittitur of $2,500, is still grossly excessive by at least $7,500. In considering that point we will view the evidence in the light most favorable to plaintiff.

At trial time plaintiff was 20 years of age. As a result of the instant casualty she received a cut on her forehead which required thirteen ·stitches to close and which left a permanent scar. She also received a compression fracture of the first lumbar vertebra and a soft tissue injury to the back. The second, third, and fourth metatarsal bones of the right foot were fractured and she also sustained a soft tissue injury to that foot.

Plaintiff spent a half day in the City Hospital where she was examined, X rayed, and her right foot was encased in a cast. After her release from the hospital she was confined to her bed for two weeks. ·On January 14, 1957, she was examined by Dr. Bowdern who prescribed a Taylor brace which plaintiff wore regularly for about four months. She has since worn it about twice a week when particularly troubled by her back. That brace extends from the shoulders to the low back and contains iron stays which stablize the back.

About two months after plaintiff was injured her husband re-enlisted in the Navy and they moved to California and took up residence with plaintiff's parents. Thereafter plaintiff received medical care at the Naval Hospital. Plaintiff testified that at trial time she could not lift anything heavy and it was necessary for her mother to help her with housework and the care of her children; that she has pain in the low back "just about every day"; that her right foot is larger than the left and she can no longer wear high heels or dance. Her husband testified that she walks with a limp and is always complaining of pain and "just acts like she is sick."

Dr. Bowdern testified that at the time of trial the fracture of plaintiff's vertebra had healed, with deformity, and resulted in a permanent functional disability of the back and that she will have pain from that condition which will persist and be permanent; that she has a weak back and will have backache and should wear the Taylor brace at intervals; that the bones in her right foot had healed with permanent deformity (displaced fractures) with permanent loss of function and lack of weight-bearing ability which will cause permanent pain; that as a result of the casualty she has developed a bunion on her right foot which is "very marked and very tender."

"There is no precise formula for gauging whether a verdict is excessive. Each case depends upon its own peculiar facts. Consideration must be given the nature and extent of the injuries and losses, plaintiff's age and his diminished earning capacity, if any, the changing economic factors and the amount of compensation awarded and approved in cases similar or of fairly comparable injuries. The ultimate test of excessiveness or of inadequacy of an award is what will fairly and reasonably compensate for the injuries sustained. * * * Where the trial court has considered and passed upon the matter of excessiveness and has ordered a substantial reduction, as here, we are usually reluctant to order a further reduction." Parlow v. Carson-Union-May-Stern Co., Mo.Sup., 310 S.W. 2d 877, 885.

In considering the issue before us we are mindful that plaintiff proved no special damages. However, when we consider

that plaintiff is a young woman and is facing a lifetime with permanent, painful, disabling injuries to her back and foot, and that she has a permanent scar on her forehead, we are of the opinion that a further reduction in the judgment is not justified.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.